UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CITY OF WALKER, CITY OF DENHAM SPRINGS, THE WILLIAMSON EYE CENTER (APMC), TIMOTHY JOHN KINCHEN, AND SHANNON FARRIS KINCHEN | * CIVIL ACTION NO: 3:17-cv-00055-JJB-EWD * * * * |
| VS. | * * |
| STATE OF LOUISIANA THROUGH THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT; GILCHRIST CONSTRUCTION CO., LLC; AUSTIN BRIDGE & ROAD, INC.; BOH BROS. CONSTRUCTION CO., LLC; JAMES CONSTRUCTION GROUP, L.L.C.; EUSTIS ENGINEERING, LLC, f/k/a EUSTIS ENGINEERING SERVICES, LLC; MODJESKI & MASTERS, INC.; GULF ENGINEERS AND CONSULTANTS, INC.; VOLKERT, INC.; BARRIERE CONSTRUCTION CO., LLC; ABMB ENGINEERS, INC.; AECOM USA, INC.; G.E.C., INC.; EVANS-GRAVES ENGINEERS, INC.; GOTECH, INC.; GEO ENGINEERS, INC.; APEX ENGINEERING; SJB GROUP, LLC; PB AMERICAS; FUGRO CONSULTANTS, INC.; AND FORTE & TABLADA, INC. | * MAG. JUDGE: ERIN WILDER- * DOOMES * * * * * * * * * * * * * * * * * |

## AMENDED NOTICE OF REMOVAL

NOW INTO COURT, through undersigned counsel, comes Defendant, James Construction Group, L.L.C. ("James Construction"), which files this Amended Notice of Removal to remove Plaintiffs' class action from the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, to this Court, on the following grounds:

## THE REMOVED CASE

**1.**

On January 5, 2017, Plaintiffs, City of Walker, City of Denham Springs, The Williamson Eye Center (APMC), Timothy John Kinchen, and Shannon Farris Kinchen, individually and on behalf of all others similarly situated, filed a *Class Action Petition for Damages and Injunctive Relief* in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, styled "*City of Walker, City of Denham Springs, The Williamson Eye Center (APMC), Timothy John Kinchen, and Shannon Farris Kinchen v. State of Louisiana through the Department of Transportation and Development, et al.*" bearing Docket Number 654,278, Sec. 26.

**2.**

On January 11, 2017, Defendant, James Construction, was served with Plaintiffs' *Class Action Petition for Damages and Injunctive Relief* by personal service.

**3.**

James Construction has taken no action in the 19th Judicial District Court prior to this removal filing.

**4.**

On January 26, 2017, James Construction filed its Notice of Removal, removing the State Court Proceedings to the United States District Court for the Middle District of Louisiana. R. Doc. 1.

**5.**

Attached as Exhibit A, *in globo*, to the Notice of Removal filed on January 26, 2017 is a docket sheet and certified copy of all pleadings in the court record at the 19th Judicial District Court as of January 24, 2017. R. Doc. 1-1. (Hereinafter "State Court Proceedings"). On

February 7, 2017, a Motion to Supplement State Court Record was filed with additional State Court filings. R. Doc. 34.

**6.**

In their state court *Class Action Petition for Damages and Injunctive Relief*, Plaintiffs seek compensatory damages and injunctive relief due to damage to their property that occurred during the August of 2016 flood in Louisiana. Plaintiffs allege that the "wrongful conduct" of the twenty-one (21) named Defendants "in connection with the design and installation of a concrete median barrier along Interstate 12 . . . as part of the 'Geaux Wider' highway widening project through East Baton Rouge and Livingston Parishes" led to their damages.

**7.**

On February 3, 2017, Defendant, Gilchrist Construction Co, LLC ("Gilchrist") filed a Joinder in Removal adopting by reference James Construction's Notice of Removal and also raising additional bases for the removal of this matter. R. Doc. 14.

**8.**

James Construction appears herein to amend its prior Notice of Removal (R. Doc. 1) to supplement previous allegations, to assert additional bases for removal, and to adopt the Joinder in Removal filed by Gilchrist.

**9.**

This Amended Notice of Removal is timely filed within thirty (30) days of service upon James Construction.

## BASIS OF JURISDICTION AND REMOVAL

I. **Removal is proper under the Class Action Fairness Act.**

**10.**

Pursuant to 28 U.S.C. § 1332(d)(2), "[t]he district courts shall have original jurisdiction of any civil actions in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—(A) any member of a class of Plaintiffs is a citizen of a State different from any defendant . . . ."

**11.**

To determine whether the amount in controversy exceeds $5,000,000, "the claims of the individual class members shall be aggregated . . . ." § 1332(d)(6). Plaintiffs seek damages on behalf of all individuals, commercial businesses and local governmental entities "within East Baton Rouge and Livingston Parishes north of I-12 that would not have sustained damages as a result of inundation/flooding in this area during and immediately following the rain event on or about August 10, 2016, but for the alteration of natural surface water flow resultant from the 'Geaux Wider' project." Due to the amount of individuals, commercial businesses and local governmental entities located in the defined geographical areas, and the flood damage incurred during the August of 2016 flood, the amount in controversy exceeds $5,000,000.

**12.**

Additionally, the "minimal diversity" requirement for removal under 28 U.S.C. § 1332(d) is also met as at least one Plaintiff is a citizen of Louisiana and at least one Defendant (including James Construction) is a citizen of another state. Specifically, James Construction Group, L.L.C. is a Florida limited liability company whose sole member is a Delaware corporation. Therefore, this Court has original jurisdiction over Plaintiffs' class action claims.

## II. Removal is proper because of substantial questions of federal law.

### 13.

28 U.S.C. § 1331 provides federal jurisdiction of all civil actions "arising under" federal law. The United States Supreme Court has found that statutory term satisfied in either of two circumstances: 1) federal jurisdiction attaches when federal law creates the cause of action asserted, and 2) a federal court has jurisdiction of a state-law claim if it necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state power. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1569–70, 194 L. Ed. 2d 671 (2016). In this case, the second circumstance exists such that federal jurisdiction attaches.

### 14.

Plaintiffs allege that Defendants were "to determine the effective drainage throughout the Project limits and develop a hydraulic design that did not create or increase the magnitude of existing deficiencies of the I-12 structure,"[1] which design was "obligated to cover codes and standards, as well as hydrology."[2] Plaintiffs further allege that questions of law and fact which are common to the proposed class, include: "[w]hether Defendants determined effective drainage throughout the Project limits"; "[w]hether Defendants developed a hydraulic design that did not create or increase the magnitude of existing deficiencies of the I-12 structure"; and "[w]hether Defendants were obligated to develop a structure that received surface waters flowing naturally from higher land."[3]

---

[1] Petition, ¶¶ 4.12; 4.19.
[2] Petition, ¶ 4.16.
[3] Petition, ¶ 6.5.

**15.**

The projects at issue were funded by the United States Government, subject to federal design standards and oversight, and were largely governed by the Federal Highway Act statutes and regulations. 23 U.S.C. § 103(c)(B)(i) provides that "highways on the Interstate System shall be designed in accordance with the standards of section 109(b)." Pursuant to 23 U.S.C. § 109(a), "[t]he Secretary shall ensure that the plans and specifications for each proposed highway project under this chapter provide for a facility that will- (1) adequately serve the existing and planned future traffic of the highway in a manner that is conducive to safety, durability, and economy of maintenance; and (2) be designed and constructed in accordance with criteria best suited to accomplish the objectives described in paragraph (1) and to conform to the particular needs of each locality." To that end, 23 U.S.C. § 109(b) states: "The geometric and construction standards to be adopted for the Interstate System shall be those approved by the Secretary in cooperation with the State transportation departments…The Secretary shall apply such standards uniformly throughout all the States."

> 23 U.S.C. § 109(h) further requires the Secretary to:
>
> [P]romulgate guidelines designed to assure that possible adverse economic, social, and environmental effects relating to any proposed project on any Federal-aid system have been fully considered in developing such project, and that the final decisions on the project are made in the best overall public interest, taking into consideration the need for fast, safe and efficient transportation, public services, and the costs of eliminating or minimizing such adverse effects and the following:…
>
> > (2) destruction or disruption of man-made and natural resources, aesthetic values, community cohesion and the availability of public facilities and services;…
> > (4) injurious displacement of people, businesses and farms; and
> > (5) disruption of desirable community and regional growth.
>
> Such guidelines shall apply to all proposed projects with respect to which plans, specifications, and estimates are approved by the Secretary after the issuance of such guidelines.

Moreover, 23 U.S.C. § 112(b)(3)(B) requires that a "[f]inal design under a design-build contract referred to in subparagraph (A) shall not commence before compliance with section 102 of the National Environmental Policy Act of 1969." 23 U.S.C. § 139(c)(4) requires the federal government to ensure environmental compliance, stating "[t]he Secretary shall ensure that the project sponsor complies with all design and mitigation commitments made jointly by the Secretary and the project sponsor in any environmental document prepared by the project sponsor in accordance with this subsection."

Additionally, 23 C.F.R. § 650.101, *et. seq.*, is entitled "Location and Hydraulic Design of Encroachment on Flood Plains." Pursuant to 23 C.F.R. § 650.107(a), "[t]he provisions of this regulation shall apply to all encroachments and to all actions which affect base flood plains." To that end, 23 C.F.R. § 650.111 addresses location hydraulic studies utilizing the National Flood Insurance Program maps, 23 C.F.R. § 650.115 addresses design standards, and 23 C.F.R. § 650.117 addresses the content of hydraulic design studies, including FEMA criteria set forth in 44 C.F.R. § 60.3 (entitled "Flood plain management criteria for flood-prone areas.")

**16.**

In addition to the aforementioned statutes and regulations under the Federal-Aid Highway Act, 23 U.S.C. § 101, *et. seq*, Plaintiffs' claims in this case also implicate and/or may implicate additional federal laws, including, but not limited to: The Department of Transportation Act, 49 U.S.C. § 1651, *et. seq.*, The National Environmental Policy Act, 42 U.S.C. § 4321, *et. seq.*, The Flood Disaster Protection Act, 42 U.S.C. § 4001, *et. seq.*, The Rivers and Harbors Act, 33 U.S.C. § 400, *et. seq.*, The Federal Water Pollution Control Act/The Clean Water Act, 33 U.S.C. § 1251, *et. seq.*, The Fish and Wildlife Act. 16 U.S.C. § 742a, *et. seq.*, The Coastal Zone Management Act, 16 U.S.C. § 145, *et. seq.*, as well as certain executive orders pertaining to flood plains and wetlands.

**17.**

Plaintiffs' allegations that the Defendants were to develop a hydraulic design pursuant to certain unidentified codes and standards are directly referring to and implicating federal law, including, but not limited to, the aforementioned federal statutes and regulations. As reflected by the Plaintiffs' alleged questions of law and fact which are common to the proposed class, matters relating to federal design standards, and particularly federal hydraulic design regulations, are critical to the elements of Plaintiff's claims, including, but not limited to, the duties imposed upon Defendants and any alleged breach thereof.

**18.**

For these reasons, Plaintiffs' claims necessarily raise uniquely federal issues which are actually disputed and substantial. Furthermore, a federal forum will not disturb any congressionally approved balance of federal and state power as the applicable statutory and regulatory provisions pertaining to federal hydraulic design on interstate highway systems are to be uniformly applied throughout the States. Federal law subsumes Plaintiffs' claims in these proceedings to such a degree that a federal question has been presented.

**III. Removal is proper under the Federal Officer Removal Statute.**

**19.**

The Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), "creates federal jurisdiction even over cases brought against private parties if they are sued for conduct they committed under the direction of federal authorities and for which they have a colorable defense under federal law." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2016). "[A] defendant seeking to remove a civil action under § 1442(a)(1) must establish the following three prongs: (1) that the defendant is a person within the meaning of the statute; (2) that the defendant acted pursuant to a federal officer's directions and that a causal

nexus exists between the defendant's actions under color of federal office and the plaintiff's claims; and (3) that the defendant has asserted a 'colorable federal defense.'" *Weis v. DSM Copolymer, Inc.*, 160 F. Supp. 3d 954, 962 (M.D. La. 2016). "Section 1442(a) serves to overcome the 'well-pleaded complaint' rule that would otherwise preclude removal even if a federal defense is asserted." *Id.* "[T]he federal officer removal statute is liberally construed in favor of removal." *Id.*

**20.**

James Construction qualifies as a person under the federal officer removal statute. As set forth above, the plans and specifications for the construction projects at issue in this litigation were governed by federal law, including specific federal regulations and design standards pertaining to hydraulic design. James Construction maintains that it adhered to the federal standards and was prohibited from modifying those standards in connection with the design and construction of the hydraulic components of the project. Any modification to the design and construction of the hydraulic components of the projects were closely regulated, monitored, and/or supervised by the federal government. Accordingly, James Construction asserts the "government contractor defenses" entitling it to removal as set forth in 28 U.S.C. § 1442(a)(1).

**21.**

In addition, Plaintiff's pray for "injunctive relief in the form of abatement and specific performance, including, but not limited to construction alterations and hydrologic restoration."[4] Such relief on the interstate highway system would clearly require the approval and oversight of the federal government in accordance with federal law, including, but not limited to, the aforementioned statutes and regulations. Insofar as injunctive relief cannot be effectuated without Defendants acting under a federal officer's directions, James Construction is further

---

[4] Petition, ¶¶ 47.5; 8.9; 9.11; 10.8.

entitled to removal as set forth in 28 U.S.C. § 1442(a)(1). "[R]emoval of the entire case is appropriate so long as a single claim satisfies the federal officer removal statute." *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 463 (5th Cir. 2016).

IV. **Removal is proper as Original Jurisdiction exists pursuant to 28 U.S.C. § 1345.**

**22.**

As set forth in the Joinder in Removal filed by Gilchrist (R. Doc. 14), which arguments are hereby adopted and incorporated by reference, the State Court Petition describes a class of Plaintiffs consisting of "all individuals within East Baton Rouge and Livingston Parishes north of I-12" that would not have sustained flood damages but for the alteration of the natural surface water flow that resulted from the Interstate-12 expansion Projects. The class expressly includes "all public entities within East Baton Rouge and Livingston Parishes north of I-12."

**23.**

Congress passed the Stafford Act to provide a means of assistance by the federal government to state and local governments in carrying out their responsibilities to alleviate suffering and damage resulting from disasters. See 42 U.S.C. § 5121(b). Implementation of the Stafford Act has been delegated to the Federal Emergency Management Agency (hereinafter "FEMA"), which retains discretion in the determination of eligibility for and distribution of public assistance to affected state and local entities in such disasters. As a result of the flooding, FEMA has rendered direct disaster payments to political subdivisions included in the class of Plaintiffs.

**24.**

In addition to direct payments to political subdivisions, FEMA has rendered payments to individuals and businesses through the National Flood Insurance Program (hereinafter "NFIP"). The NFIP is administered by FEMA under the authority of the National Flood Insurance Act, 42

U.S.C. §§ 4001–4129 (hereinafter "NFIA"). The terms of Standard Flood Insurance Policies (hereinafter "SFIP") are dictated by FEMA. 44 C.F.R. §§ 61.4(b), 61.13(d). Payments on SFIP claims come ultimately from the federal treasury. *Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir.1998). Private insurance companies, through the Write Your Own ("WYO") insurance program, issue and administer insurance policies pursuant to 42 U.S.C. §§ 4071(a)(1), 4081(a) and are fiscal agents of the United States.

**25.**

42 U.S.C.A. § 5155 provides that persons receiving Federal assistance for a major disaster or emergency shall be liable to the United States to the extent that such assistance duplicates benefits available to the person for the same purpose from another source.

**26.**

Additionally, SFIP's contain various provisions, including subrogation rights in favor of FEMA. See *United States v. St. Bernard Parish*, 756 F.2d 1116 (5th Cir. 1985).

**27.**

In rendering payments to political subdivisions through the Stafford Act and to individuals and businesses through the NFIP, FEMA is subrogated to the rights of the recipients and may assert its entitlement to reimbursement of any duplicative payments.

**28.**

To the extent that the recipients allege that they have not been fully reimbursed by FEMA for damages sustained, FEMA is a partial subrogee. Louisiana law provides that unless there has been a total subrogation, the action may be brought only by the subrogor and the subrogee. Neither one is entitled to bring the action alone. *Travelers Indemnity Company v. Westinghouse Electric Corporation*, 429 F.2d 77(5th Cir. 1970).

**29.**

Fed. R. Civ. P. 17 provides that an action must be prosecuted in the name of the real party in interest. A partial subrogee is a real party in interest. See *U.S. v. Aetna Casualty*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171(1949). Furthermore, a partial subrogee is a person to be joined if feasible under Fed. R. Civ. P. 19(a). As FEMA is a partial subrogee and is entitled to reimbursement from proceeds received by the class plaintiffs, FEMA shall be considered a party plaintiff for the purposes of establishing original jurisdiction pursuant to 28 U.S.C. § 1345.

**30.**

An additional basis for federal question jurisdiction rests in the language of the applicable flood insurance policies. The flood polices issued pursuant to the NFIP contain provisions which provide: "This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended(42 U.S.C. 4001, et seq.) and Federal common law." See *Spong v. Fid. Nat. Prop & Cas. Ins. Co.*, 787 F.3d 296(5th Cir. 2015). Accordingly, United States District Courts have federal question jurisdiction over claims made under a federal flood insurance program. *Spong v. Fid. Nat. Prop & Cas. Ins. Co.*, 787 F.3d 296(5th Cir. 2015).

**31.**

Additionally and in the alternative, as noted by Gilchrist, FEMA should be considered a party to these proceedings by virtue of the fact that the Plaintiff class is defined to include "all public entities within East Baton Rouge and Livingston Parishes north of I-12." This necessarily includes FEMA and any other federal agencies possessing offices within the described geographic area. Accordingly, FEMA shall be considered a party plaintiff for the purposes of establishing original jurisdiction pursuant to 28 U.S.C. § 1345.

## REMOVAL IS TIMELY

**32.**

James Construction shows that this Notice of Removal is timely filed with this Court pursuant to the provisions of 28 U.S.C. §1446, because it is being removed within 30 days after the service of the Citation and Class Action Petition upon James Construction.

## CONSENT OF ALL DEFENDANTS IS NOT REQUIRED

**33.**

Pursuant to 28 U.S.C. § 1453(b), "[a] class action may be removed to a district court of the United States in accordance with section 1446…without the consent of all defendants." Accordingly, consent from all Defendants is not required for the removal of this class action. In addition, "[r]emoval pursuant to the federal officer removal statute does not require consent of the non-removing defendants." *Craig v. Am. Overseas Marine Corp.*, 2014 WL 7186767, n. 2 (M.D. La. Dec. 16, 2014), *aff'd sub nom. Bartel v. Alcoa S.S. Co.*, 805 F.3d 169 (5th Cir. 2015). (Citing *Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150, 152 (5th Cir.1965).)

**34.**

Alternatively, all Defendants have consented with the exception of the State of Louisiana Department of Transportation and Development (hereinafter "DOTD"). DOTD has not waived its immunity from suit in Federal Court pursuant to the Eleventh Amendment of the United States Constitution. See *Lapides v. Bd. of Regents of University System of Georgia*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806(2002). As such, DOTD is not subject to suit in Federal Court and is a nominal defendant in these proceedings from whom consent is not required. See *Rey v. Classic Cars*, 762 F.Supp. 421(D. Mass 1991) and *Hill V. City of Boston*, 706 F.Supp. 966(D. Mass. 1989). Accordingly, the unanimity requirement of 28 U.S.C. § 1446(b)(2)(A) has been satisfied.

## **VENUE**

**35.**

The venue of this removal action is a proper venue pursuant to the provisions of 28 U.S.C. §1441(a), inasmuch as the United States District Court for the Middle District of Louisiana embraces East Baton Rouge Parish and the 19th Judicial District Court, the location of the pending state court action.[5]

\*    \*    \*    \*

**36.**

Based on the foregoing, James Construction shows that Plaintiffs' class action is properly removable to this Court pursuant to the provisions of 28 U.S.C. §1441, *et seq.*

**37.**

Written notice of the filing of this removal is being provided to the adverse parties, as required by law.

**38.**

A true copy of the original Notice of Removal was filed with the Clerk of Court for the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana on January 26, 2017, as required by law.

WHEREFORE Defendant, James Construction Group, L.L.C., prays that Plaintiffs' class action be removed to this Court, that this Court accept jurisdiction of Plaintiffs' class action, and that the class action be placed on the docket of this Court for further proceedings, as though it had originally been instituted in this Court.

---

[5] While venue for this removal is proper in the United States District Court for the Middle District of Louisiana pursuant to 28 U.S.C. §1441(a), James Construction expressly reserves any and all rights afforded by law or equity to subsequently seek a transfer of venue.

- 15 -

    **BREAZEALE, SACHSE & WILSON, L.L.P.**
    One American Place, 23rd Floor
    Post Office Box 3197
    Baton Rouge, Louisiana 70821-3197
    Telephone:  225-387-4000
    Fax:  225-381-8029
    Email: Murphy.Foster@bswllp.com
    Email: John.Andrishok@bswllp.com
    Email: Thomas.Temple@bswllp.com

    */s/ Murphy J. Foster, III*
    **Murphy J. Foster, III**, T.A. LABR #5779
    **John T. Andrishok**, LABR #24942
    **Thomas R. Temple, Jr.**, LABR #26130
    *Counsel for James Construction Group, LLC*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CITY OF WALKER, CITY OF DENHAM SPRINGS, THE WILLIAMSON EYE CENTER (APMC), TIMOTHY JOHN KINCHEN, AND SHANNON FARRIS KINCHEN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | * * * * * * * * | CIVIL ACTION NO: 3:17-cv-00055-JJB-EWD<br><br>JUDGE: JAMES J. BRADY |
| VS. | * * * | MAG. JUDGE: ERIN WILDER-DOOMES |
| STATE OF LOUISIANA THROUGH THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, ET AL. | * * * | |

## AFFIDAVIT

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

BEFORE ME, the undersigned authority, personally came and appeared

**John T. Andrishok**

who, after being duly sworn did depose and say:

That the allegations contained in the Amended Notice of Removal filed herein are true and correct to the best of his knowledge, information, and belief.

_____
John T. Andrishok

**SWORN TO AND SUBSCRIBED** before me, Notary Public, this 9th day of February, 2017, Baton Rouge, Louisiana.

_____
NOTARY PUBLIC

Notary Name Printed: _Jacob Rouse_
Notary ID No.: _34742_
My Commission Expires: _Life_