UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CITY OF WALKER, ET AL.

VERSUS

STATE OF LOUISIANA,
THROUGH THE DEPARTMENT
OF TRANSPORTATION AND
DEVELOPMENT, ET AL.

CIVIL ACTION

NO. 17-55-KDE-EWD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 28, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CITY OF WALKER, ET AL.

CIVIL ACTION

VERSUS

NO. 17-55-KDE-EWD

STATE OF LOUISIANA,
THROUGH THE DEPARTMENT
OF TRANSPORTATION AND
DEVELOPMENT, ET AL.

**REPORT AND RECOMMENDATION**

Before the court is a Motion to Remand[1] filed by Plaintiffs, City of Walker, City of Denham Springs, The Williamson Eye Clinic (APMC), Timothy John Kinchen, and Shannon Farris Kinchen (collectively, "Plaintiffs"). James Construction Group, LLC ("James Construction"), Gilchrist Construction Co., LLC ("Gilchrist"), Eustis Engineering, LLC and GeoEngineers, Inc. have filed substantive Oppositions,[2] which many of the other defendants in this action have joined and incorporated as their own.[3] Plaintiffs have filed a Reply,[4] and James Construction and

---

[1] R. Doc. 129.

[2] R. Doc. 154 (James Construction's Opposition), R. Doc. 155 (Gilchrist's Opposition), R. Doc. 143 (Eustis and GeoEngineers' Opposition).

[3] *See*, R. Doc. 138 (Barriere Construction Co., LLC's Opposition adopting "all the memoranda of other defendants in this matter "including specifically the oppositions filed by" James Construction and Gilchrist); R. Doc. 139 (GEC, Inc., GOTECH, Inc., Gulf Engineers & Consultants, Inc., and SJB Group, LLC's opposition where they "join in the opposition filed by" James Construction); R. Doc. 141 (Opposition of Austin Bridge & Road, Inc., adopting opposition of James Construction); R. Docs. 142 & 144 (Opposition of Apex Engineering and Forte and Tablada, Inc., adopting by reference opposition of James Construction); R. Doc. 145 (Opposition by Fugro USA Land, Inc. f/n/a Fugro Consultant, Inc. opposing Motion to Remand "[f]or the reasons set forth in all Defendants' Opposition [sic] to Plaintiffs' Motion to Remand"); and R. Doc. 137 (Boh Bros. Construction Co., LLC's Opposition adopting "all the memoranda of other defendants in this matter" and additionally addressing the scope of its particular involvement in the Geaux Wider project).

[4] R. Doc. 159. Additionally, the State of Louisiana, Through the Department of Transportation and Development, has filed a Reply, to which James Construction has filed a response. R. Docs. 171 & 174. On June 28, 2017, Plaintiffs filed a Response Brief wherein they adopted DOTD's Reply brief and submitted "that for the reasons stated by the LA DOTD, the federal court should abstain from exercising jurisdiction over this suit." R. Doc. 179, p. 1. Plaintiffs' Response Brief also addresses assertions made by Gilchrist in Sur Reply.

Gilchrist have filed Sur-Replies.[5]    For the reasons set forth herein, the undersigned RECOMMENDS[6] that the Motion to Remand be GRANTED.

## I.    Background

### A.    Plaintiffs' Class Action Petition for Damages and Injunctive Relief

On January 5, 2017, Plaintiffs filed a Class Action Petition for Damages and Injunctive Relief (the "Petition") against twenty-one defendants: (1) the State of Louisiana, through the Department of Transportation and Development (the "DOTD");[7] (2) Gilchrist; (3) Austin Bridge & Road, Inc.; (4) Boh Bros. Construction Co., LLC ("Boh Bros."); (5) James Construction; (6) Eustis Engineering, LLC; (7) Modjeski & Masters, Inc.; (8) Gulf Engineers and Consultants, Inc.; (9) Volkert, Inc.; (10) Barrier Construction Co., LLC; (11) ABMB Engineers, Inc.; (12) AECOM USA, Inc.; (13) GEC Inc.; (14) Evans-Graves Engineers, Inc.; (15) GOTECH, Inc.; (16) Geo Engineers, Inc.; (17) APEX Engineering; (18) SJB Group, LLC; (19) PB Americas; (20) FUGRO Consultants, Inc.; and (21) Forte & Tablada, Inc. (collectively, "Defendants"). Per their Petition, Plaintiffs seek

> both injunctive relief and compensatory damages to rectify the wrongful conduct of the Defendants in connection with the design and installation of a concrete median barrier along Interstate 12 ("I-12") as part of the "Geaux Wider" highway widening project through East Baton Rouge and Livingston Parishes.  This solid concrete median barrier extends for nearly 19 miles through East

---

[5] R. Docs. 165 & 166.

[6] The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review." *Davidson v. Georgia-Pacific, LLC,* 819 F.3d 758, 765 (5th Cir. 2016).

[7] All Defendants, with the exception of DOTD, have consented to removal.  R. Doc. 68, ¶ 34.  James Construction asserts that "DOTD has not waived its immunity from suit in Federal Court pursuant to the Eleventh Amendment of the United States Constitution.  As such, DOTD is not subject to suit in Federal Court and is a nominal defendant in these proceedings from whom consent is not required."  R. Doc. 68, ¶ 34.  The DOTD has filed a Motion to Dismiss based on Eleventh Amendment sovereign immunity.  R. Doc. 95.  In the DOTD's Memorandum in Support of its Motion to Dismiss, it notes, "the State believes that the entire case should be remanded to state court because it cannot proceed against the DOTD in this Court, and it would be more efficient and would avoid the possibility of inconsistent judgments if the case were litigated in one forum."  R. Doc. 95-1, p. 8, n. 33.

> Baton Rouge and Livingston Parishes, acting as a man-made flood
> wall that interrupts the natural flow of surface waters.
>
> In August, 2016 this man-made flood wall impounded rain waters
> north of I-12, causing flooding and destruction throughout the Class
> Geography in East Baton Rouge and Livingston Parishes. If this
> man-made flood wall is allowed to remain in its present condition,
> the nature of the land north of I-12 will remain altered to the
> detriment of every entity within the Class Geography.[8]

Plaintiffs allege that in 2009 the DOTD commenced the Geaux Wider design and construction project in order to widen I-12 to three lanes.[9] Plaintiffs assert that "the non-governmental defendants" (*i.e.*, all Defendants other than DOTD) "were all Design-Builders and/or Designers, either by direct contract with the DOTD or through subcontractor agreements with other defendants."[10]

Plaintiffs allege that the new six-lane roadway was to be built within the existing state right-of-way and "was a design-build project in which the Design-Builder would design all roadway geometrics, including the horizontal alignments, vertical alignments, superelevation, typical sections, median barriers, permanent pavement markings, rumble strips/stripes, and all other required roadway features."[11] Plaintiffs further allege that "[o]ne of the responsibilities of the Designer in achieving completeness of design was to determine the effective drainage throughout the Project limits and develop a hydraulic design that did not create or increase the magnitude of existing deficiencies of the I-12 structure."[12] Plaintiffs assert that "[a]ll of the non-governmental defendants, as Design-Builders and/or Designers, had a duty to develop a hydraulic

---

[8] R. Doc. 1-1, p. 1.

[9] R. Doc. 1-1, ¶ 4.5.

[10] R. Doc. 1-1, ¶ 4.18.

[11] R. Doc. 1-1, ¶ 4.6.

[12] R. Doc. 1-1, ¶ 4.12.

design such that the roadway structure and concrete barrier median did not create or increase the magnitude of existing deficiencies of the I-12 structure"[13] and that "[a]ll of the defendants had reason to believe that the design, construction, and/or adherence to the plans and specifications of the I-12 concrete barrier median would create a hazardous condition or unreasonable risk of harm to the Plaintiffs."[14]

Per the Petition, beginning on or about August 10, 2016, a nearly stationary "mesoscale convective system" resulted in widespread rainfall which caused "many rivers, including the Amite and Comite Rivers, to overtop their banks. Flood waters reached levels that would have normally flowed across I-12 but for the 'Geaux Wider' project, including, but not limited to, the concrete median barrier."[15] Plaintiffs allege that the impounded flood waters backed up into towns and the surrounding areas north of I-12,[16] that "[t]he artificial floodwall created by the I-12 concrete median barrier also forced unnaturally impounded rainwater into the rivers and streams of Livingston Parish at an excessive rate, as the natural process of ground water drainage was interrupted,"[17] and that "[a]s a result of the unnatural flow into the waterways of Livingston Parish, additional areas were flooded that ordinarily would not have flooded."[18]

Plaintiffs seek to represent three proposed sub-classes of "public entities," "commercial enterprises," and individuals "within East Baton Rouge and Livingston Parishes north of I-12 that would not have sustained damages as a result of inundation/flooding in this area during and

---

[13] R. Doc. 1-1, ¶ 4.19.

[14] R. Doc. 1-1, ¶ 4.20.

[15] R. Doc. 1-1, ¶¶ 5.1 & 5.2.

[16] R. Doc. 1-1, ¶ 5.4. It appears that this paragraph in Plaintiffs' Petition is incomplete ("These impounded flood waters continued to back up into the [Towns of…] and the surrounding areas north of I-12, flooding an estimated 70% of all structures within this geography.").

[17] R. Doc. 1-1, ¶ 5.5.

[18] R. Doc. 1-1, ¶ 5.6.

immediately following the rain event on or about August 10, 2016, but for the alteration of natural surface water flow resultant from the 'Geaux Wider' project."[19]  Plaintiffs allege that this suit should proceed as a class action because, *inter alia*, common questions of law and fact predominate, including "[w]hether Defendants determined effective drainage throughout the Project limits;" "[w]hether Defendants developed a hydraulic design that did not create or increase the magnitude of existing deficiencies of the I-12 structure;" "[w]hether Defendants' acts and/or omissions changed the location, flow and natural pulsing patterns of the waters moving through and across lands in East Baton Rouge and Livingston Parishes;" and "[w]hether the Defendants negligently designed, engineered, constructed or maintained the 'Geaux Wider' project…."[20]

Plaintiffs' Petition alleges five causes of action: (1) negligence based on Defendants' failure "to consider the detrimental effect on hydrologic conditions within the Class Geography when designing, constructing, and/or adhering to the plans and specifications of the I-12 concrete median barrier;"[21] (2) strict liability based on Defendants' care, custody, and control of the I-12 corridor and the concrete median barrier, which Plaintiffs classify as a building pursuant to La. C.C. art. 2322;[22] (3) prevention or alteration of the natural servitude of drainage in violation of La.

---

[19] R. Doc. 1-1, ¶ 6.1(A)-(C).  Plaintiffs assert that "there are believed to be in excess of 40,000 individuals and entities who sustained damages that were proximately caused by the negligence or fault of one or more of the Defendants." R. Doc. 1-1, ¶ 6.15.

[20] R. Doc. 1-1, ¶ 6.5(a), (b), (d), and (g).

[21] R. Doc. 1-1, ¶ 7.3.

[22] R. Doc. 1-1, ¶¶ 8.1-8.9.  La. C.C. art. 2322 provides, in part, that "[t]he owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care."  Plaintiffs also cite La. C.C. art. 2317.1, which provides, in part, that "[t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care."

C.C. art. 656;[23] (4) creating a nuisance (including interference with the health, safety, peace and/or comfort of Plaintiffs and the continued increased risk of flood) in violation of Louisiana law;[24] and (5) inverse condemnation (either as a permanent taking or, alternatively, a temporary taking "for the period of time between August 10, 2016 through the date when rehabilitation of the concrete barrier flood wall eliminates the probability of recurring flooding."[25]  In addition to "[i]njunctive relief in the form of abatement and specific performance, including, but not limited to construction and hydrologic restoration," Plaintiffs seek damages for "loss of property (real and personal), immovable and movable; diminution of property value; loss of income; costs of relocation; loss of business opportunities and business interruption; evacuation expenses; and other special damages to be proven at trial."[26]

### B.  James Construction's Amended Notice of Removal & the Motion to Remand

On January 26, 2017, James Construction removed the case to this court.[27]  On February 14, 2017, this court granted James Construction's Motion for Leave to File Amended Notice of Removal.[28]  The Amended Notice of Removal[29] sets forth a number of grounds for federal jurisdiction: (1) the Class Action Fairness Act, 28 U.S.C. § 1332(d); (2) 28 U.S.C. § 1331, based

---

[23] R. Doc. 1-1, ¶ 9.9.  La. C.C. art. 656 provides that "[t]he owner of the servient estate may not do anything to prevent the flow of the water. The owner of the dominant estate may not do anything to render the servitude more burdensome."

[24] R. Doc. 1-1, ¶¶ 10.1-10.9.  Plaintiffs cite La. C.C. art. 667, which provides in part: "Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care."

[25] R. Doc. 1-1, ¶¶ 11.1-11.9.

[26] R. Doc. 1-1, ¶¶ 12.2 and Prayer for Relief.

[27] R. Doc. 1.

[28] R. Docs. 52 & 67.

[29] R. Doc. 68.

on substantial questions of federal law; (3) the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1); and (4) 28 U.S.C. § 1345 (which provides for original federal jurisdiction in actions commenced by the United States).

Plaintiffs have filed a Motion to Remand.[30]  Therein, Plaintiffs assert that the "primary thrust" of their Petition is that the Geaux Wider project "resulted in the installation of a 'work' upon the State's property that violated the natural servitude of drain in the Amite River Basin" and that the entirety of their Petition "is based upon Louisiana state law, focused on rectifying the installation of a man-made flood wall that has caused, and will continue to cause, substantial harm to Plaintiffs.  None of the allegations were intended to give rise to federal jurisdiction, nor were they pled in such a way as to imply federal jurisdiction."[31]

## II.    Law and Analysis

### A.  General Legal Standards

"A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction."  *Maze v. Protective Ins. Co.*, 2017 WL 164420, at *1 (E.D. La. Jan. 17, 2017) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)).  The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.  *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).  The party seeking removal bears the burden of demonstrating that federal subject matter jurisdiction exists.  *See*, *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008); *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002).  "Because removal raises significant federalism concerns, the removal

---

[30] R. Doc. 129.

[31] R. Doc. 129, p. 1.

statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'"  *Gutierrez*, 543 F.3d at 251 (quoting *In re Hot–Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)).

### B.  Jurisdiction Under the Class Action Fairness Act ("CAFA")

Pursuant to 28 U.S.C. § 1332(d)(2), "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant."  As set forth by the Fifth Circuit, "CAFA grants the federal courts original jurisdiction to hear interstate class actions where: (1) the proposed class contains more than 100 members; (2) minimal diversity exists between the parties (*i.e.*, at least one plaintiff and one defendant are from different states); (3) the amount in controversy exceeds $5,000,000; and (4) the primary defendants are not states, state officials, or other governmental entities."  *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 569 (5th Cir. 2011) (citing 28 U.S.C. § 1332(d)(2) & (5)(B)).

"Plaintiffs do not dispute that the proposed class is at least 100 members, that minimal diversity exists between the parties, or that the amount in controversy is greater than $5,000,000."[32] Instead, Plaintiffs argue that remand is appropriate based on: (1) 28 U.S.C. § 1332(d)(5)(A) (providing that CAFA's grant of original jurisdiction "shall not apply" to any class action in which "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."); and (2) 28 U.S.C. § 1332(d)(4)(A) (known as the "local controversy" exception").

---

[32] R. Doc. 129-1, p. 5, n. 5.

### i. 28 U.S.C. § 1332(d)(5)(A)

Pursuant to 28 U.S.C. § 1332(d)(5)(A), CAFA jurisdiction does not extend to a class action in which "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief." "The plain text of § 1332(d)(5)(A), using the definite article before the plural nouns, requires that *all primary defendants be states*. Had Congress desired the opposite, it would have used 'a' and the singular, or no article. There is no tension between this plain language and the legislative history, which explains that the exception is not meant to create a loophole whereby plaintiffs can avoid CAFA jurisdiction by naming a state as a primary defendant in an action largely targeting non-states." *Frazier v. Pioneer Americas, LLC*, 455 F.3d 542, 546 (5th Cir. 2006) (Emphasis added).[33] Accordingly, in order for the exception set forth in 28 U.S.C. § 1332(d)(5)(A) to apply, Plaintiffs must establish that all primary defendants are states. *Frazier*, 455 F.3d at 547. As set forth herein, because the non-governmental defendants named in this suit also should be considered "primary defendants" as this court has defined that term, *Nolan v. Exxon Mobil Corp.*, 2013 WL 6194621, at * 3 (M.D. La. Nov. 26, 2013), the exception set forth in 28 U.S.C. § 1332(d)(5)(A) does not apply.

---

[33] The *Frazier* court rejected "plaintiffs' suggestion that this result violates the Eleventh Amendment and the principles of state sovereign immunity. Because CAFA eliminated the requirement of unanimity of consent to removal, a state may find itself in a case removed to federal court without having joined in the removal. Such a state, having taken no affirmative act, has not waived immunity and can still assert it." *Frazier*, 455 F.3d at 546 (citing 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants.").

Plaintiffs assert that the State of Louisiana is the only primary defendant[34] such that Fifth Circuit jurisprudence "obligates this court to decline the exercise of CAFA jurisdiction."[35] Plaintiffs categorize the DOTD as the only primary defendant, the general contractors as a second tier of "significant defendants," and the subcontractor defendants as "less significant defendants." Plaintiffs contend that "[i]n the present matter, the Louisiana DOTD was the contracting agency that sought the roadway improvements that caused the Plaintiffs' harm, that maintained final approval of all engineering designs for these improvements, that maintained final acceptance of the work performed, and that owned the land burdened with the servitude of drain that was violated."[36]

The Fifth Circuit has distinguished between the terms "primary defendants" and "significant defendants." *See*, *Watson v. City of Allen, Tx.*, 821 F.3d 634, 641 (5th Cir. 2016) ("The phrase 'primary defendants' indicates a chief defendant or chief class of defendants. According it a broader meaning is inconsistent with this ordinary meaning and with CAFA's distinct treatment of 'primary' defendants, *see* 28 U.S.C. § 1332(d)(4)(B), (d)(5), and 'significant' defendants, *see id*. at § 1332(d)(4)(A)(i)(II).").  In *Watson*, the Fifth Circuit held that in a suit challenging the lawfulness of red light camera ordinances, the primary defendants were the state of Texas and Texas municipalities which enacted the challenged ordinances and that although "various other claims against the private defendants" had been asserted, those claims were

---

[34] R. Doc. 129-1, p. 12.  The parties dispute who has the burden of establishing that the State is or is not the primary defendant.  In *Frazier*, 455 F.3d at 546, the court held that "plaintiffs have the burden to show the applicability of the §§ 1332(d)(3) – (5) exceptions when jurisdiction turns on their application."  This court, following *Frazier*, requires Plaintiffs to bear the burden of establishing that the only primary defendant in this suit is the DOTD.  *See*, *Abshire v. Louisiana*, 2009 WL 50178, at * 4 (M.D. La. Jan. 7, 2009) ("the legislative history of CAFA indicates that '[i]f a purported class action is removed pursuant to these [§ 1332(d)] jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional requirements are not satisfied.'") (citing S. Rep. 109–14 at 42, 2005).

[35] R. Doc. 129-1, p. 6.

[36] R. Doc. 129-1, p. 6.

"expressly contingent on a threshold finding that the challenged legislative scheme [was] unconstitutional."  821 F.3d at 641.

Plaintiffs argue that "[a]s in *Watson* where the claims against the private companies were expressly contingent on a threshold finding that the challenged legislative scheme was unconstitutional, the claims against the contractors here are expressly contingent upon a finding that the state's installation of the highway improvements interrupted the natural servitude of drain and caused harm to Plaintiffs."[37]  In opposition, James Construction points out that all of Plaintiffs' claims are asserted against all defendants equally, and that "DOTD is the only defendant **excluded** from Plaintiffs' allegation pertaining to a duty to develop a hydraulic design which did not create or increase the magnitude of existing deficiencies of the I-12 structure."[38]  Further, James Construction argues that, in contrast to *Watson*, "the claims against the non-governmental Defendants are not contingent upon the claims against DOTD."[39]

"CAFA does not define the term 'primary defendant.'"  *Nolan v. Exxon Mobil Corp.*, 2013 WL 6194621, at * 3 (M.D. La. Nov. 26, 2013).  However, this court has defined a primary defendant as follows:

> A primary defendant is one (1) who has the greater liability exposure; (2) is the most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the claims asserted by plaintiffs; or (5) is the only defendant named in one particular cause of action.

*Nolan*, 2013 WL 6194621, at * 3 (citing *Gatti v. Louisiana*, 2011 WL 1827437 (M.D. La. Feb. 25, 2011) (citing *Sorrentino v. ASN Roosevelt Center, LLC*, 588 F.Supp.2d 350, 359 (E.D.N.Y. Dec.

---

[37] R. Doc. 129-1, p. 7.

[38] R. Doc. 154, p. 7.

[39] R. Doc. 154, p. 8.

1, 2008)).  The factors set forth in *Nolan* are disjunctive.  To the extent any non-governmental defendant is also considered a primary defendant under any of the *Nolan* factors set forth above, the state cannot be considered the only primary defendant and the exception set forth in § 1332(d)(5)(A) cannot apply.  *Frazier*, 455 F.3d at 546 ("The plain text of § 1332(d)(5)(A), using the definite article before the plural nouns, requires that *all primary defendants be states*.") (Emphasis added).

Here, as currently set forth in Plaintiffs' Petition, each of Plaintiffs' five causes of action is directed at all of the Defendants equally.  Significantly, Plaintiffs allege that "it was the Design-Builder's sole responsibility to provide Design Plans, Project Specifications, and Working Plans of such a nature to develop a finished product in accordance with Contract requirements."[40] Plaintiffs further allege that "[o]ne of the responsibilities of the Designer in achieving completeness of design was to determine the effective drainage throughout the Project limits and develop a hydraulic design that did not create or increase the magnitude of existing deficiencies of the I-12 structure"[41] and that "[a]ll of the non-governmental defendants, as Design-Builders and/or Designers, had a duty to develop a hydraulic design such that the roadway structure and concrete barrier median did not create or increase the magnitude of existing deficiencies of the I-12 structure."[42]  Based on these allegations, Plaintiffs are alleging the direct liability of the non-governmental Defendants.  Unlike *Watson*, where plaintiffs' claims were primarily a challenge to the governmental defendants' actions, here, Plaintiffs seek to hold each Defendant liable for the alleged insufficient hydraulic design, the creation of a nuisance under Louisiana law, and alleged violation of the natural servitude of drainage.  As such, the non-governmental Defendants are

---

[40] R. Doc. 1-1, ¶ 4.9.

[41] R. Doc. 1-1, ¶ 4.12.

[42] R. Doc. 1-1, ¶ 4.19.

subject to a substantial portion of the claims asserted by Plaintiffs and this court cannot, as would be required to apply the exception set forth in § 1332(d)(5)(A), find that DOTD is the only primary defendant in this action. *See*, *Frazier*, 455 F.3d at 546. *See also*, *Robinson v. Cheetah Transp.*, 2006 WL 3322580, at * 3 (W.D. La. Nov. 14, 2006) ("Given that the alleged negligent loading of the cranes onto the truck is a significant facet of the plaintiffs' claims, it is indisputable that Union Pacific would be expected to incur a significant portion of the loss if found liable; therefore, Union Pacific is a primary defendant in this case."). Accordingly, because not all of the primary defendants in this action are states, the exception to CAFA jurisdiction set forth in 28 U.S.C. § 1332(d)(5)(A) does not apply.[43]

### ii. 28 U.S.C. § 1332(d)(4)(A)

Plaintiffs also assert that under the "local controversy exception," 28 U.S.C. § 1332(d)(4)(A), this court must decline jurisdiction. Pursuant to 28 U.S.C. § 1332(d)(4)(A), a district court "shall decline to exercise jurisdiction" under CAFA:

> (A)(i) over a class action in which--
>
> > (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> >
> > (II) at least 1 defendant is a defendant--
> >
> > > (aa) from whom significant relief is sought by members of the plaintiff class;
> > >
> > > (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

---

[43] Because the non-governmental Defendants are sued directly and are subject to a substantial portion of the claims asserted, the court does not also analyze the remaining *Nolan* factors. However, to the extent DOTD is immune from suit in federal court, it appears that the non-governmental Defendants also have the greatest liability exposure and would be most able to satisfy a potential judgment if this case were to proceed in this court.

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) **during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons**[44]

Plaintiffs assert that the local controversy exception applies because: (1) more than two-thirds of the class members are citizens of Louisiana; (2) two of the defendants from whom Plaintiffs seek significant relief and whose conduct forms a significant basis of Plaintiffs' claims, Gilchrist and Boh Brothers, are Louisiana domiciliaries; and (3) there has been no class action filed in the previous three years asserting the same or similar factual allegations.  In opposition to the Motion to Remand, James Construction does not question Plaintiffs' assertion that the requirements of 28 U.S.C. § 1332(d)(4)(A)(i) are met.  Instead, James Construction asserts that "the final element precluding the 'local controversy' exception is present, such that the Court need not delve into the remaining elements" and specifically relies on a class action entitled *Levi Robertson, et al. v. The State of Louisiana and the Dept. of Transportation and Development*, No. 2016-0002272, Div. E, 21st Judicial District Court, Parish of Tangipahoa, State of Louisiana (the "*Robertson* Suit").[45]  James Construction argues that the *Robertson* Suit also seeks damages

---

[44] Emphasis added.

[45] James Construction's opposition only addresses the effect of the *Robertson* Suit on the local controversy exception. Similarly, while Gilchrist generally adopts James Construction's opposition to the Motion to Remand, it also provides additional argument regarding the local controversy exception limited to the question of the effect of the *Robertson* Suit.  *See*, R. Doc. 155, p. 7 ("The application of this exception hinges on whether the same or similar factual allegations has been filed in the three years preceding the instant matter.").

resulting from the August 2016 flooding and "also alleges that the construction of I-12 blocked the natural servitude of drainage and caused the flooding and resulting damages."[46]

James Construction attaches a copy of the Petition for Damages filed on August 22, 2016 in the *Robertson* Suit as an exhibit to its opposition.[47] Per that Petition, Mr. Robertson alleges that "[s]ome years prior to August 12, 2016, DOTD constructed a crossing of the Highway I-12 crossing of the Tangipahoa River flood plain near the town of Robert, LA."[48] The remainder of Mr. Robertson's factual allegations are as follows:

> Petitioner's allegations are not of negligence but are of the blocking of the servitude of drainage as set out in Civil Code Article 655 through 658 which are the natural servitudes of drainage. **The allegations in this lawsuit are the exact same claims of wrongful acts as set out in the same case entitled <u>Jean Boudreaux vs. The State of Louisiana, DOTD</u>**, Docket No.: 71408, Parish of Tangipahoa, State of Louisiana which was successfully tried to the 21st Judicial District Court three times, the Louisiana First Circuit Court of Appeal three times and the Louisiana Supreme Court two times. **In that case it was proved that the construction of Louisiana I-12 across the flood plain of the Tangipahoa River which approximately blocked 78% of the Tangipahoa River Flood Plain which caused the flood waters of April, 1983 to back up above I-12** and flooded the class members North of I-12 and to cause the flood waters to flow West of the I-12 flood plain through an area lower than the I-12 crossing of the flood plain and flood South of I-12. These are the same causes as demonstrated in the 1983 <u>Boudreaux vs. The State of Louisiana DOTD</u> proceeding causing flooding in the same area. Causation has not changed, the flood plains have not changed and the areas of flooding have not changed except that the area flooded has increased. Class Members have changed through death, moving into the flooded area or moving away from the flooded area. The Louisiana Department of Transportation and Development can simply search their files in the <u>Boudreaux vs. The State of Louisiana DOTD</u> case and get all of the

---

[46] R. Doc. 154, p. 10.

[47] R. Doc. 154-1, Exhibit A.

[48] R. Doc. 154-1, Exhibit A, ¶ 2.

information needed to properly and adequately respond if they wish to prepare a defense to a case that has already been lost.[49]

"In enacting CAFA, Congress recognized the benefits of having one federal forum to adjudicate multiple cases filed in various courts against a defendant." *Vodenichar v. Halcon Energy Prop., Inc.*, 733 F.3d 497, 508 (3rd Cir. 2013). "Moreover, Congress sought to have all but truly local controversies proceed in federal court and found that when a 'controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that [the local controversy] exception is intended to address.'" *Id.* (citing S. Rep. No. 109-14, at 40-41, 2005 U.S.C.C.A.N. at 39). "In short, Congress wanted to ensure that defendants did not face copycat, or near copycat, suits in multiple forums and hence excluded from the local controversy exception cases where a defendant was named in multiple similar actions." *Id.*

"Under Section 1332(d)(4)(A)(ii), if a class action asserting 'the same or similar factual allegations' has been filed against any of the defendants by any person within three years of the filing of the removed action, the case shall not be remanded under the 'local-controversy' exception." *Caruso v. Allstate Ins. Co.*, 469 F.Supp.2d 364, 370 (E.D. La. Jan. 8, 2007). "Section 1332(d)(4)(ii) is unambiguous. Its plain language dictates that this Court must retain jurisdiction" where a class action lawsuit asserting similar claims has been filed within the statutorily prescribed period. *Stewart v. Ruston Louisiana Hosp. Co., LLC*, 2014 WL 4678606, at * 6 (W.D. La. Sept. 19, 2014). *See also*, *Caruso*, 469 F.Supp.2d at 370-371 ("These proposed class actions against two of the named defendants in the present action undoubtedly assert similar factual allegations as those set forth here. Since they were filed during the three-year period before the instant action, their existence is fatal to plaintiffs' argument that this lawsuit falls under CAFA's 'local-

---

[49] R. Doc. 154-1, Exhibit A, ¶ 3. Emphasis added.

controversy' exception."). Conversely, where "no other class action has been filed asserting the same or similar factual allegations…the court is required to decline to exercise its CAFA jurisdiction…." *Rasberry v. Capitol County Mut. Fire Ins. Co.*, 609 F.Supp.2d 594, 605-606 (E.D. Tex. Feb. 19, 2009).

"[T]he local controversy exception looks exclusively to whether the other case has asserted 'the same or similar *factual allegations*.'" *Dutcher v. Matheson*, 840 F.3d 1183, 1192 (10th Cir. 2016). Accordingly, courts considering the exception focus on whether "the same acts of wrongdoing" are alleged. *Id.* at 1191 (affirming denial of remand under local controversy exception where the causes of action in the two class actions "fundamentally rely on demonstrating the same facts."). *See also*, *Brown v. Saint-Gobain Perf. Plastics Corp.*, 2016 WL 6996136, at * 4 (D.N.H. Nov. 30, 2016) ("Courts have found such similarities where plaintiffs alleged nearly identical conduct by the same defendant in different states resulting in the same injury to different plaintiffs."); *Rasberry*, 609 F.Supp.2d at 605 ("Nor is the exception mooted when the purported class actions are identical in other incidental respects, such as arising out of the same event and including a common defendant. Rather, the determinative factor is whether *similar factual allegations* have been made against the same defendant in multiple actions.").

Here, James Construction relies on the *Robertson* Suit as a class action "asserting the same or similar factual allegations" in support of its position that the local controversy exception does not apply. The damages sought via the *Robertson* Suit are allegedly related to the August, 2016 flooding which also gives rise to Plaintiffs' claims here. However, per the Petition for Damages filed in the *Robertson* Suit, "[t]he allegations in [*Robertson*] are the exact same claims of wrongful acts set out in the same case entitled <u>Jean Boudreaux vs. The State of Louisiana</u>, DOTD, Docket

No.: 71408, Parish of Tangipahoa, State of Louisiana."[50]  In *Boudreaux v. State, Dept. of Transp. and Development*, 780 So. 2d 1163, 1168 (La. App. 1 Cir. 2001) (the "*Boudreaux* Suit"), class members alleged that the original construction of U.S. Interstate 12 (which was completed in 1975) caused flooding and damage to the property of the class members in part of Tangipahoa Parish in 1983 and violated the natural servitude of drainage.  *Id*. at 1165.  The flooding at issue in the *Boudreaux* Suit was allegedly caused by the "final physical construction of the interstate highway as it existed in 1983."  *Id*.  *See also*, *id*. at 1166 (discussing that for purposes of prescription, there was no evidence that the class members knew or should have known "that their lands were vulnerable to the flooding and damage that occurred as a result of the final physical configuration of the infrastructure for Interstate 12.").  "The class asserted that the natural servitude of drainage was violated when Interstate 12 and its embankments caused backwater to invade and flood the surrounding lands in excess of the natural flood plain absorption."  *Id*. at 1166.  The appellate court affirmed the lower court's attribution of liability for the flooding to the DOTD, citing expert testimony that the flooding was caused by a bridge and embankment that was part of the original construction of the Interstate.  *See*, *id* at 1167 (explaining that plaintiffs' experts opined that the flooding "was caused by the obstruction of Interstate 12…if the bridge had not been there, the water would have passed through the flood plain without flooding the subject areas" and that "as a result of the bridge, the embankment, and the heavy underbrush, there existed a seventy-six percent restriction of the flood plain.").  The court held there was "ample evidence in the record" to support the lower court's finding that "DOTD's erection of Interstate 12 violated the natural servitude of drainage.  The obstruction caused by the bridge and its embankment was the cause in fact of the flooding of the properties within the boundaries of the class."  *Id*. at 1168.

---

[50] R. Doc. 154-1, ¶ 3.

Both the *Robertson* Suit and the *Boudreaux* Suit address flooding allegedly caused by the original construction/configuration of I-12 (specifically, the construction of a bridge and embankment allegedly blocking the Tangipahoa River flood plain).[51]   In contrast, Plaintiffs' Petition alleges that the later widening of I-12 failed to ensure that the "existing deficiencies of the I-12 structure"[52] were not made worse.   Plaintiffs do not assert that the original construction or configuration of I-12 caused flooding; instead they allege that "the design and installation of a concrete median barrier…as part of the 'Geaux Wider' highway widening project…acts as a man-made flood wall that interrupts the natural flow of surface waters."[53]   Plaintiffs allege that but for the widening project and construction of the median wall, the existing original construction/configuration of I-12 would ***not*** have resulted in alleged violations of the natural servitude of drainage.[54]   Accordingly, Plaintiffs allege a completely different cause of obstruction (a median wall) than that at issue in the *Robertson* and *Boudreaux* Suits (the configuration of a bridge and embankment as part of the original construction of I-12).   These are different acts of alleged wrongdoing based on different hydraulic designs.   Although the abstention rule set forth in 28 U.S.C. § 1332(d)(4)(A) should be "narrowly construed," *Preston v. Tenet Healthsystem Memorial Medical Ctr., Inc.*, 485 F.3d 804, 810 (5th Cir. 2007), because the factual allegations of

---

[51] The flooding at issue in the *Robertson* and *Boudreaux* Suits occurred in Tangipahoa Parish.  Here, Plaintiffs allege that the Geaux Wider project only took place in East Baton Rouge and Livingston Parishes.  R. Doc. 1-1, p. 1. Defendants have presented no evidence that the obstruction allegedly formed by the Geaux Wider project even exists in the geographical areas at issue in *Robertson* and *Boudreaux*.  The factual allegations are therefore inherently different.

[52] R. Doc. 1-1, ¶ 4.12.

[53] R. Doc. 1-1.

[54] As explained above, Plaintiffs seek to represent three proposed sub-classes "within East Baton Rouge and Livingston Parishes north of I-12 that would not have sustained damages as a result of inundation/flooding in this area during and immediately following the rain event on or about August 10, 2016, but for the alteration of natural surface water flow resultant from the 'Geaux Wider' project."  R. Doc. 1-1, ¶ 6.1(A)-(C).  *See also*, R. Doc. 1-1, p. 1 (alleging wrongful conduct "in connection with the design and installation of a concrete median barrier along Interstate 12…[which acts] as a man-made flood wall that interrupts the natural flow of surface waters."); R. Doc. 129-1, p. 3 ("In altering the I-12 roadway, the natural flow of these surface waters was altered.").

the *Robertson* and *Boudreaux* Suits and Plaintiff's Petition here are not the same or similar, and because Defendants do not contest Plaintiffs' assertion that the other requirements mandating abstention pursuant to the local controversy exception are met, abstention from the exercise of CAFA jurisdiction pursuant to 28 U.S.C. § 1332(d)(4)(A) is required.[55]  *Rasberry*, 609 F.Supp.2d at 605-606.

### C.  Jurisdiction Pursuant to 28 U.S.C. § 1331

"A case aris[es] under federal law for § 1331 purposes if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 678 (2006) (internal quotations omitted).  *See also*, *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005) (explaining that federal question jurisdiction "is invoked by and large by plaintiffs pleading a cause of action created by federal law" but "[t]here is, however, another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal interests.").  Because federal courts are courts of limited jurisdiction, it is presumed that a suit removed to federal court lies outside this limited jurisdiction, and the party seeking removal bears the burden of demonstrating that a federal question exists pursuant to

---

[55] In Plaintiffs' Reply Memorandum in Support of Motion to Remand, Plaintiffs argue that a federal court cannot completely resolve Plaintiffs' causes of action because "the State of Louisiana will not waive its sovereign immunity pursuant to the Eleventh Amendment and will not be subject to this suit in federal court." R. Doc. 159, p. 11.  Plaintiffs further assert that "because the State of Louisiana did not waive its sovereign immunity and would not be subject to this suit in federal court, an action in the 19th Judicial District involving similarly situated Plaintiffs making the same accusations against the LA DOTD was inevitable.  Such an action was filed on May 18, 2017." R. Doc. 159, pp. 11-12.  Although this purported class action filed in state court does assert the "same or similar factual allegations" against the DOTD (indeed, the background facts set forth in both petitions appear to be almost exactly the same), 28 U.S.C. § 1332(d)(4)(A)(ii) only requires analysis of class actions filed "during the 3-year period *preceding* the filing" of this suit.  Emphasis supplied.  Accordingly, the May 18, 2017 state court filing does not affect the local controversy exception analysis.

28 U.S.C. § 1331. *See*, *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Here, James Construction does not argue that federal law creates Plaintiffs' cause(s) of action; instead, it argues that substantial questions of federal law exist because defendants were required to adhere to federal regulations, specifically including a federal regulation requiring a hydraulic design "sufficient for a 50-year flood."[56]

Absent a federal statutory cause of action, the Supreme Court has recognized the difficulty in determining when state law claims are so intertwined with issues of federal law such that they "aris[e] under" federal law for purposes of 28 U.S.C. § 1331. *See*, *Merrell Dow Pharmaceuticals Inc. v, Thompson*, 478 U.S. 804, 808 (1986) (some internal quotations omitted). In order to fit into this "special and small category" of cases in which plaintiffs have not plead a federal cause of action but the claims nevertheless arise under federal law for purposes of 28 U.S.C. § 1331, *Empire Healthchoice*, 547 U.S. at 699, the Supreme Court has framed the inquiry as "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005).[57] *See also*, *Singh v. Duane Morris, LLP*, 538 F.3d 334, 338 (5th Cir. 2008)

---

[56] R. Doc. 154, p. 17.

[57] In *Grable*, plaintiff asserted that the sale of its property to satisfy a federal tax deficiency was invalid because the IRS had improperly sent the seizure notice. *Grable*, 545 U.S. at 311. Defendant removed the suit to federal court, arguing that plaintiff's quiet title claim depended on the interpretation of a federal statutory notice provision. The Supreme Court found that federal question subject matter jurisdiction existed over plaintiff's suit, explaining that "[w]hether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case." *Id*. at 315. *Compare*, *Empire Healthchoice*, 547 U.S. at 700-701 (noting that federal employees' healthcare administrator's claim for reimbursement following insured's successful tort suit to be "poles apart from *Grable*" and explaining that "*Grable* presented a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous tax sale cases.' In contrast, Empire's reimbursement claim…is fact-bound and situation-specific."). Moreover, the *Grable* Court explained that "because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." *Id*. *See also*, *id*. at 319 ("jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the normal currents of litigation.").

("federal jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities."). With respect to the issue of whether the federal issue is substantial, the Fifth Circuit has noted that "'[t]he absence of any federal cause of action…[is] worth some consideration….'" *Board of Commissioners of the Southeast Louisiana Flood Protection Authority-East v. Tennessee Gas Pipeline Company, LLC*, 850 F.3d 714, 724 (5th Cir. 2017) (citing *Grable*, 545 U.S. at 318).[58]  As discussed below, because resolution of a substantial issue of federal law is not necessary to the resolution of Plaintiffs' state law claims, Defendants cannot meet their burden of establishing that this suit falls within the special and small category of cases that arise under federal law pursuant to *Grable*.  Because Defendants cannot establish that Plaintiffs' claims necessarily raise a substantial issue of federal law, additional analysis of whether, under the second prong of *Grable*, the federal issue is actually disputed, or whether, under the last prong of the *Grable* analysis, exercising federal jurisdiction would disturb the balance of federal and state judicial responsibilities, is not required.[59]

---

[58] Plaintiffs assert that "Defendants have failed to enunciate any language that would allow this court to determine whether any of the statutes display an intent by Congress to create not just a private right, but also a private remedy." R. Doc. 129-1, p. 18.  Defendants do not contest Plaintiffs' assertion that the federal laws relied on by Defendants do not create a private right of action.

[59] Although it is not necessary to reach the last prong of the *Grable* test, Plaintiffs seek to hold all Defendants (including the DOTD) liable for the alleged failure "to consider the detrimental effect on hydrologic conditions within the Class Geography when designing, constructing, and/or adhering to the plans and specifications of the I-12 concrete barrier median," R. Doc. 1-1, ¶ 7.3, and in addition to monetary damages, seek injunctive relief "in the form of abatement and specific performance, including, but not limited to construction and hydrologic restoration."  R. Doc. 1-1.  Such injunctive relief presumably can only occur with the participation of the DOTD.  Although no ruling is made here with regard to the DOTD's amenability to suit in federal court, DOTD has filed a Motion to Dismiss on the basis of Eleventh Amendment immunity.  R. Doc. 95.

James Construction asserts that "[i]t is undisputed that the 'Geaux Wider' interstate highway projects were federally funded and subject to the Federal Highway Act"[60] and relies on 23 C.F.R. § 650.115 which provides "that '[t]he design flood for encroachments by through lanes of Interstate highways shall not be less than the flood with a 2-percent chance of being exceeded in any given year. No minimum design flood is specified for Interstate highway ramps and frontage roads or for other highways."[61] James Construction asserts that its design-build contract for a portion of the Geaux Wider project incorporated by reference "The Louisiana Department of Transportation and Development's Hydraulics Manual" which in turn "specifie[d]…a 'design storm frequency' consistent with 23 C.F.R. § 650.115."[62] Accordingly, James Construction reasons that "the hydraulic design standards are governed exclusively by federal law" such that "Plaintiffs' claims for negligence and nuisance require application of federal law to establish the standard of care" and therefore "Plaintiffs are, in actuality, challenging the sufficiency of the

---

[60] R. Doc. 154, p. 14. James Construction's argument in support of federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 is focused on the effect of federal regulations on Defendants' duties related to hydraulic design. In Sur-Reply, James Construction clarifies that "Defendants have not argued that federal funding is the basis for jurisdiction in this matter." R. Doc. 166, p. 3.

[61] R. Doc. 154, p. 15. All parties agree that a "flood with a 2-percent chance of being exceeded in any given year" is equivalent to a 50 year flood design. *See*, R. Doc. 159, p. 7 ("the plain language of 23 C.F.R. § 650.115, which sets the minimum standard 50 year design storm requirement, is intended to reduce the incidence of storm water overtopping the interstate roadway at regular intervals and disrupting interstate commerce.").

[62] R. Doc. 154, pp. 16-17. With respect to later phases of the Geaux Wider project, James Construction contends that contract documents continued to incorporate the Hydraulics Manual "but also expressly identified the 50-year flood-frequency requirement in the Drainage Performance Specification, stating: 'Cross drain pipes must be sized to accommodate 50-year design peak discharge.'" R. Doc. 154, p. 17. James Construction has attached as exhibits to its Memorandum in Opposition to the Motion to Remand the Design-Build Agreement between DOTD and James Construction [R. Doc. 154-2], Performance Specifications [R. Doc. 154-3], and the Hydraulics Manual [R. Doc. 154-4]. James Construction also attaches contract documents purportedly setting forth performance specifications for later phases of the Geaux Wider project in which reference was made to the Hydraulics Manual and which also required "cross drain pipes" to be "sized to accommodate 50-year design peak discharge…" R. Doc. 154-5. These documents do not explicitly reference 23 C.F.R. § 650.115 and instead only require a 50-year flood design.

federal regulation pertaining to hydraulic design standards by asserting that the 50-year flood design for the projects as mandated by federal law was insufficient to protect their property."[63]

In support of its position that Plaintiffs' claims raise substantial issues of federal law that satisfy the requirements set forth in *Grable*, James Construction relies primarily on *Board of Commissioners of the Southeast Louisiana Flood Protection Authority-East v. Tennessee Gas Pipeline Company, LLC*, 29 F.Supp.3d 808 (E.D. La. June 27, 2014) ("*Board of Commissioners*"). There, plaintiff sought damages and injunctive relief against ninety-two oil and gas companies whose actions allegedly caused erosion of coastal lands, leaving south Louisiana more vulnerable to hurricanes and tropical storms.  *Id*. at 816.  While plaintiff brought only state law claims, its petition explicitly set out that "Defendants' dredging and maintenance activities at issue in this action are governed by a longstanding and extensive regulatory framework under both federal and state law…" and alleged that this regulatory framework established defendants' standard of care. *Id*. at 819.  In finding that plaintiff's negligence claim necessarily involved the application of federal law, the *Board of Commissioners* court pointed out that plaintiff specifically relied on three federal statutes (the Rivers and Harbors Act of 1899, the Clean Water Act of 1972, and the Coastal Zone Management Act of 1972) to establish defendants' duty of care, and that another court in the Eastern District had previously determined that oil and gas companies "do not have a duty under Louisiana law to protect members of the public 'from the results of coastal erosion allegedly caused by [pipeline] operators that were physically and proximately remote from plaintiffs or their property.'"  *Id*. at 855 (citing *Barasich v. Columbia Gulf Transmission Co.*, 467 F.Supp.2d 676,

---

[63] R. Doc. 154, pp. 17-18.  Similarly, G.E.C. Inc., GOTECH, Inc. Gulf Engineers & Consultants, Inc., and SJB Group, LLC argue in their separate opposition to the Motion to Remand that "any attack by plaintiffs on the hydraulic standards for design used on this project is actually an attack on the 'uniform' federal standards to be applied 'throughout all the States.'"  R. Doc. 139, p. 3.  Likewise, Eustis and GeoEngineers assert that the principal issue raised in Plaintiffs' Petition is "whether the drainage criteria established under federal law was reasonable under the circumstances."  R. Doc. 143, p. 2.

693 (E.D. La. Sept. 28, 2006)).[64]  The *Board of Commissioners* court went on to find that the federal issues raised were substantial, explaining that "[t]he disputed issues implicate coastal land management, national energy policy, and national economic policy – all vital federal interests." *Id*. at 861.  The court found that "the breadth of Plaintiff's claims amounts to a collateral attack on an entire regulatory scheme" and that "Plaintiff's claims are premised on the notion that this regulatory framework provides inadequate protection for the residents of southeastern Louisiana, and through this litigation, Plaintiff seeks to have the entire oil and gas industry compensate residents for the shortfall." *Id*. at 862.

On appeal, the Fifth Circuit confirmed that plaintiff's "negligence and nuisance claims necessarily raise[d] federal issues sufficient to justify federal jurisdiction." *Board of Commissioners of the Southeast Louisiana Flood Protection Authority-East v. Tennessee Gas Pipeline Company, LLC*, 850 F.3d 714, 725-726 (5th Cir. 2017).  The Fifth Circuit reiterated that "'[t]he fact that a substantial federal question is necessary to the resolution of a state-law claim is not sufficient to permit federal jurisdiction'" and that "only in a 'special and small category' of cases will federal jurisdiction exist when state law creates the cause of action." *Id*. (quoting *Singh v. Duane Morris, LLP*, 538 F.3d 334, 337-338 (5th Cir. 2008) & *Gunn v. Minton*, 133 S.Ct. 1059, 1064 (2013)).  However, the court noted that the Louisiana Supreme Court had "explicitly rejected the prospect that a statutory obligation of 'reasonably prudent conduct' could require oil and gas lessees to restore the surface of dredged land" and explained that this "absence of any state law grounding for the duty…means that the duty would have to be drawn from federal law." *Id*. at 723 (citing *Terrebonne Parish Sch. Bd. v. Castex Energy, Inc.*, 893 So.2d 789, 801 (La. 2005) (holding

---

[64] For similar reasons, the court also found that plaintiff's nuisance claim and third party beneficiary claims necessarily raised federal issues.  *Board of Commissioners*, 29 F.Supp.3d at 855-856.

that article 122 of the Louisiana Mineral Code did not impose a duty to restore the surface to its original pre-lease condition absent proof that the lessee had exercised his rights under the lease unreasonably or excessively)).  The Fifth Circuit stated that the dispute between the parties did "not just concern whether Defendants breached duties created by federal law; it concern[ed] whether federal law creates such duties." *Id*. at 724.  As the court went on to explain:

> If the federal statutes at issue in this case do create duties and obligations under the laws of the various states, then it might be inappropriate for federal question jurisdiction to obtain every time a state-law claim is made on that basis.  But where, as here, one of the primary subjects of dispute between the parties is whether the federal laws in question may properly be interpreted to do that at all, the implications for the federal docket are less severe.

*Id*. at 725.

Here, Plaintiffs allege that "[a]ll of the non-governmental defendants, as Design-Builders, and/or Designers, had a duty to develop a hydraulic design such that the roadway structure and concrete barrier median did not create or increase the magnitude of existing deficiencies of the I-12 structure"[65] and that Defendants "had reason to believe that the design, construction, and/or adherence to the plans and specifications of the I-12 concrete barrier median would create a hazardous condition or unreasonable risk of harm to the Plaintiffs."[66]  In contrast to the petition in *Board of Commissioners*, Plaintiffs do not rely on a "longstanding and extensive regulatory framework" set forth in federal law to define the duties owed to them, and while Defendants assert that only federal law may be used to impose any duties upon them with regard to the design and construction of the median wall at issue, they fail to cite any authority similar to that relied upon in *Board of Commissioners* wherein courts found an absence of duty under Louisiana law.  *See,*

---

[65] R. Doc. 1-1, ¶ 4.19.

[66] R. Doc. 1-1, ¶ 4.20.

*Terrebonne Parish Sch. Bd. v. Castex Energy, Inc.*, 893 So.2d 789, 801 (La. 2005); *Barasich v. Columbia Gulf Transmission Co.*, 467 F.Supp.2d 676, 693 (E.D. La. Sept. 28, 2006). *See also*, *Riehm v. Wood Resources, LLC*, 2016 WL 6123372, at *4 (E.D. La. Oct. 20, 2016) (remanding case to state court despite defendants' argument that federal permits and laws established the applicable standard of care and that the court would have to determine whether defendants were in compliance with the Clean Air Act and distinguishing *Board of Commissioners* by explaining that there, "[t]he plaintiff *explicitly alleged* that these [federal] statutes provided the duty the defendants owed to the plaintiff, and the plaintiff 'never point[ed] to any specific Louisiana statutes and regulations'" whereas in the matter before it, "Defendants may owe a duty to Plaintiffs under Louisiana Civil Code Articles 667-669, Louisiana Code Article 2315, and local ordinances…the Court in *Board of Commissioners* conclusively determined that the defendants did not have an independent duty under Louisiana law."). *See also*, *State v. Smithkline Beecham Corp.*, 2016 WL 452318, at *5 (M.D. La. Feb. 4, 2016) ("In sum, while Defendant's alleged conduct 'may be assessed against the backdrop of federal regulation,' the linchpin of Plaintiff's action is whether Defendant's conduct independently violated Louisiana law.") (internal citations omitted). Because Plaintiffs have not explicitly relied on federal law in their Petition, and because a duty under Louisiana law has not been foreclosed by controlling jurisprudence, *Board of Commissioners* is not controlling.

James Construction additionally argues that "Plaintiffs frame their claims as based solely upon Defendants' purported failure to fulfill their contractual obligations" and that "'[a] plaintiff in an action for negligence, who bases his suit upon the theory of a duty owed to him by the defendant as a result of a contract must be a party or privy to the contract….'"[67] However, the

---

[67] R. Doc. 166, p. 2 (citing *Chem. Cleaning, Inc. v. Brindell-Bruno, Inc.*, 186 So. 2d 389, 392 (La. App. 4 Cir. 1966)).

Louisiana Supreme Court has held that "lack of privity should not be a legal defense in a tort suit against a contractor." *Marine Ins. Co. v. Strecker*, 100 So. 2d 493, 532 (La. 1958).  As the *Marine Ins.* court explained:

> If the act of the contractor causes damage and he is at fault, he is under an obligation to the injured party to repair the damage under Article 2315 of our Civil Code, and the injured party has a right of action to enforce the obligation imposed by this article.  The contractor, of course, may escape liability under substantive tort law if, for instance, there is no proof of his negligence, no establishment of the fact that the injury or damage was foreseeable or that danger from defective construction would be probable, or no proof that the injury was proximately caused by the contractor's conduct.

*Id.  See also*, *Lumber Products, Inc. v. Hiriart*, 255 So. 2d 783, 787 (La. App. 4 Cir. 1971) ("[W]here the damage sued for is not the defective work but is instead damage caused by the defective work, a tort action against the contractor is proper when the elements for delictual recovery are present.").  Plaintiffs have alleged that Defendants "had reason to believe that the design, construction, and/or adherence to the plans and specifications of the I-12 concrete barrier would create a hazardous condition or unreasonable risk of harm to the Plaintiffs."[68]  This allegation seems to encompass a general duty based on foreseeability of harm.  *See*, *Gulf Prod. Co., Inc. v. Hoover Oilfield Supply, Inc.*, 672 F.Supp.2d 752, 756-757 (E.D. La. Nov. 20, 2009) (noting that under La. C.C. art. 2315 "privity of contract is not required to bring a claim for recovery of damages against a contracting party" and finding plaintiffs established enough facts to support a negligence claim against defendants who fabricated, constructed and installed a natural gas flow line that subsequently ruptured and explaining that "'[w]hether a defendant owes a duty to a plaintiff depends on various factors, and the primary indicator of duty is whether the harm

---

[68] R. Doc. 1-1, ¶ 4.20.

29

suffered by the plaintiff was foreseeable.'") (quoting *Consolidated Aluminum v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987)).

Finally, James Construction's argument that the only duties imposed upon Defendants must be defined by federal, rather than state, law, is at base an argument that federal question jurisdiction should be established on defensive preemption, *i.e.*, that Defendants only had a duty to comply with federal standards related to the hydraulic design.[69] "It is well-settled within this Circuit that when a plaintiff fails to affirmatively allege a federal claim, 'anticipated or potential defenses, *including defenses based on federal preemption*, do not provide a basis for federal question jurisdiction.'" *Bernstein v. Atlantic Richfield Co.*, 2015 WL 3454740, at * 2 (E.D. La. May 29, 2015) (quoting *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328 (5th Cir. 2008) (citing *PCI Transp., Inc. v. Fort Worth & Western R. Co.*, 418 F.3d 535, 543 (5th Cir. 2005) (emphasis added); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption.")). "Conflict and field preemption, which this Circuit has collectively termed 'defensive preemption,' do 'not create federal jurisdiction and simply declare the primacy of federal law, regardless of the forum or the claim.'" *Id.* (quoting *Elam v. Kansas City So. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) (citing *Barrois*, 533 F.3d at 331) (internal citations omitted)). In *Bernstein*, the court granted a motion to remand where plaintiff made no mention of any federal law in his petition but defendant argued that the standard to which it was expected to adhere was defined exclusively by the Federal Energy Regulatory Commission and plaintiff's

---

[69] *See*, R. Doc. 154, p. 154 ("23 C.F.R. § 650.115 provides that interstate systems shall be designed for a flood with a 2-percent chance of being exceeded in any given year.  Plaintiffs' claims essentially challenge whether that uniform framework mandated by the Federal Highway Act and enforced by the Secretary of Transportation provides adequate protection to residents of Louisiana and question whether Defendants were required to do more than comply with the federal standard of care.").

request for injunctive relief implicated FERC's exclusive authority to determine whether and how pipelines may be relocated or abandoned. There, the court found that defendant's "arguments in support of jurisdiction [were] merely thinly-veiled defenses of preemption…because the Court will be 'required to analyze whether the duties [plaintiff] claims exist conflict with federal regulation.'" *Id*. at * 2. Moreover, the *Bernstein* court noted that the "state court is fully capable of using its discretion to determine whether injunctive relief is available, or whether monetary damages would adequately remedy Plaintiff's injuries…." *Id*. at * 1. Like the result in *Bernstein*, James Construction's position that only federal law dictates the requirements for the hydraulic design at issue is an attempt to create federal subject matter jurisdiction out of what otherwise would be considered defensive preemption. James Construction has not met its burden of establishing either that resolution of a federal issue is necessary to resolution of Plaintiffs' state law claims or that Plaintiffs' Petition raises a substantial issue of federal law.

### D.  The Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1)

Pursuant to 28 U.S.C. § 1442(a)(1), "[a] civil action…that is commenced in a State court and that is against or directed to…(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office…" may be removed to the district court for the district and division embracing the place wherein it is pending. As noted by this court, "[t]he purpose of this removal statute is to protect the lawful activities of the federal government from undue state interference. It allows suits to be removed despite the non-federal cast of the complaint, and reflects a congressional policy that federal officers and the federal government itself require the protection of a federal forum." *Leonard v. Board of Supervisors of*

*Louisiana State University and Agricultural and Mechanical College*, 2014 WL 2197042, at * 2 (M.D. La. Jan. 17, 2014).

The Fifth Circuit has interpreted 28 U.S.C. § 1442(a)(1) "to require a defendant to show (1) that it is a person within the meaning of the statute, (2) that it has 'a colorable federal defense,' (3) that it 'acted pursuant to a federal officer's directions,' and (4) 'that a causal nexus exists between [its] actions under color of federal office and the plaintiff's claims.'" *Zeringue v. Crane Co.*, 846 F.3d 785, 789 (5th Cir. 2017) (internal citations omitted). *See also*, *Crutchfield v. Sewerage and Water Board of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2016) (explaining that the federal officer removal statute "creates federal jurisdiction even over cases brought against private parties if they are sued for conduct they committed under the direction of federal authorities and for which they have a colorable defense under federal law."). "Unlike the general removal provision, which is strictly construed in favor of remand, the federal officer removal statute is liberally construed in favor of removal." *Weis v. DSM Copolymer, Inc.*, 160 F.Supp.3d 954, 962 (M.D. La. Feb. 2, 2016) (citing *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147-148 (2007)). Although liberally construed, "[t]he defendant bears the burden of making this showing…." *Bartel v. Alcoa S.S. Co., Inc.*, 805 F.3d 169, 172 (5th Cir. 2015).

### i. James Construction as a "Person" Under the Statute

"[T]he Supreme Court has long recognized that the removal statute also applies to private persons and corporate entities 'who lawfully assist' the federal officer 'in the performance of his official duty.'" *Savoie v. Huntington Ingalls*, 817 F.3d 457, 461 (5th Cir. 2016) (citing *Watson*, 551 U.S. at 151). Plaintiffs do not contest that James Construction is a person within the meaning of the federal officer removal statute. *See*, R. Doc. 129-1, p. 23 ("This prong is not contested as

the Supreme Court has long recognized that corporate entities qualify as persons within the meaning of the statute.").

### ii.  The "Acting Under" Requirement

The Supreme Court has made it clear that the words "acting under" are broad and are to be liberally construed; however, their interpretation must be limited by the statute's "language, context, history, and purposes." *Watson*, 551 U.S. at 147.  Significantly, the Supreme Court has held that "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone.  A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phase 'acting under' a federal 'official.'"  *Watson*, 551 U.S. at 153.  "A private entity is acting under the direction of a federal officer where it 'fulfilled the terms of a contractual agreement by providing the Government with a product that it used to help conduct a war' and arguably 'performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform.'"  *Weis*, 160 F.Supp.3d at 963. (quoting *Watson*, 551 U.S. at 153-154).  *See also*, *Wilde v. Huntington Ingalls, Inc.*, 616 Fed. Appx. 710, 713 (5th Cir. 2015) ("in order to be 'acting under' the color of federal authority in the context of federal contractor immunity, the Supreme Court has looked to whether the contractor 'is helping the Government to produce an item that it needs ... [or is] perform[ing] a job that, in the absence of a contract with a private firm, the Government itself would have had to perform.'").

James Construction argues that "[i]n this case, compliance with 23 C.F.R. § 650.115 was delegated to the private entities by way of the design-build contracts which imposed a 50-year flood design."[70]  James Construction asserts that "Defendants produced a hydraulic design in strict

---

[70] R. Doc. 154, p. 24.

accordance with 23 C.F.R. § 650.115 that the federal government would have otherwise been required to provide had it performed the work."[71]  Defendants' reliance on federal regulations related to hydraulic design is misplaced.  As noted above, "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phase 'acting under' a federal 'official.'"  *Watson*, 551 U.S. at 153.

James Construction further argues that pursuant to the "Louisiana Stewardship Agreement" in effect during the Geaux Wider project, the Federal Highway Administration "had 'Oversight Responsibility' for interstate projects with an estimated construction cost exceeding $1 million."[72]  James Construction contends that "[f]or those projects on which the FHWA has oversight responsibility, the FHWA is specifically designated as the 'Agency Responsible' for the **Hydraulic design**, erosion and sediment control design.  Since the FHWA was the entity ultimately responsible for the hydraulic design, Defendants were 'acting under' the FHWA with respect to that work."[73]

The Fifth Circuit has noted that "[d]irect oversight of the specific acts that give rise to a plaintiff's complaint is not required to satisfy" the acting under requirement of 28 U.S.C. § 1442.  *Zeringue v. Crane Co.*, 846 F.3d 785, 792 (5th Cir. 2017).  However, "the Supreme Court has clarified that [the words "acting under"] 'must refer to ... a relationship that involves 'acting in a certain capacity, considered in relation to one holding a superior position or office.'  This relationship 'typically involves 'subjection, guidance, or control,' but, at a minimum, it 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'"  *Id.* (citing *Watson*, 551 U.S. at 151).  Despite James Construction's assertion that the Geaux Wider

---

[71] R. Doc. 154, p. 24.

[72] R. Doc. 166, p. 5.

[73] R. Doc. 166, p. 5.

project was subject to federal inspection and approval based on federal funding, it has provided no basis for this court to find that federal supervision of the project (rather than simple compliance with applicable federal regulations) occurred. *Compare*, *Crutchfield v. Sewerage and Water Board of New Orleans*, 2015 WL 1781663, at * 2 (E.D. La. April 20, 2015) (removal proper under § 1442 where removing defendant worked under the supervision of the U.S. Army Corps of Engineers and "[t]he project was funded in its entirety by the federal government and the Army Corps of Engineers exercised direct and detailed control over Hill Brothers' construction activities throughout.").

James Construction's assertion that the FHWA was designated as the responsible federal agency based on the estimated construction cost of the Geaux Wider project is too far attenuated to support removal based on 28 U.S.C. § 1442. Such oversight as set forth in the Stewardship Agreement is not specific to the Geaux Wider project, and, to the extent the non-governmental Defendants were required to develop a hydraulic design, Plaintiffs have alleged that such design work was performed at the behest of DOTD (the entity which would, absent the non-governmental Defendants' design, have been required to develop same). Although "for jurisdictional purposes," James Construction "need prove…only that its entitlement to the defense is subject to reasonable debate," *Crutchfield*, F.3d at 375, James Construction has provided no basis for its assertion that the project was closely regulated, monitored, and/or supervised by the federal government. *Compare*, *Sewell*, 2016 WL 7385701, at *4 (granting summary judgment on government contractor defense where evidence demonstrated that United States Army Corps of Engineers "meaningfully reviewed and approved the specifications prior to construction" such that "when it came to actual construction, the Contractors proceeded in hand with detailed instructions, substantively blessed by USACE. Clearly, USACE was the agent of decision on all critical

features of the work, as demonstrated by its level of involvement."); *Miles*, 2004 WL 1794527, at *2 (finding James Construction raised "a colorable defense, the 'government contractor defense,' because James acted under the direct control and supervision of the Corps.").

### iii. The "Colorable Federal Defense" Requirement

Although James Construction seeks to rely on a "government contractor defense," which "provides immunity to contractors for conduct that complies with the specifications of a federal contract," *Crutchfield*, 829 F.3d at 375, James Construction does not contend that it (or any of the other non-governmental Defendants) were federal government contractors. Instead, the contracts at issue were entered into between DOTD and the non-governmental Defendants. "For the government contractor defense to apply, (1) the government must have approved reasonably precise specifications; (2) the equipment or work must have conformed to those specifications; and (3) the contractor must have warned of any dangers that were known to the contractor but not to the government." *Sewell v. Sewerage and Water Board of New Orleans*, 2016 WL 7385701, at * 3 (E.D. La. Dec. 21, 2016). With respect to the requirement of reasonably precise specifications, "the specifications must be particular to the contractor's work; federal regulations of general applicability will not meet this standard even if they are highly detailed." *Louisiana United Business Ass'n Cas. Ins. Co. v. J&J Maintenance, Inc.*, 133 F.Supp.3d 852, 859 (W.D. La. Sept. 24, 2015). For the same reasons James Construction has failed to establish that it "acted under" a federal officer's directions, James Construction also fails to establish that the federal government approved "reasonably precise specifications" related to the hydraulic design for the Geaux Wider project. *Compare*, *Leonard*, 2014 WL 2197042, at * 2 (finding removing defendants satisfied their burden under §1442(a)(1) where defendants "produced sufficient evidence to demonstrate the U.S. Government's direct and specific control of the design and manufacturing of the airplanes built"

by the removing defendants); *Miles v. Sewerage and Water Board of New Orleans*, 2004 WL 1794527, at * 2 (E.D. La. Aug. 10, 2004) (finding James Construction acted under the direction of a federal officer, "namely, the Corps and its chief engineer for the project, Timothy Roth," where Notice of Removal and supporting affidavit from James Construction's project superintendent stated that "the Corps had direct and detailed control over James' work, and performed daily inspections to insure that it was being performed in compliance with the specifications of the Corp.").

Because there has been no showing that James Construction "acted under" a federal officer or that the federal government approved "reasonably precise specifications" related to the hydraulic design for the Geaux Wider project, James Construction has failed to establish federal subject matter jurisdiction under 28 U.S.C. § 1442.[74]

### E.  The United States as Plaintiff Pursuant to 28 U.S.C. § 1345[75]

Pursuant to 28 U.S.C. § 1345, "[e]xcept as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."  Defendants reason that the Federal Emergency Management Agency ("FEMA") is a real party in interest pursuant to Fed. R. Civ. P. 17 and a person to be joined if feasible under Fed. R. Civ. P. 19(a) based on FEMA's subrogation interest arising from its alleged direct payments to

---

[74] Although James Construction recognizes that it must also show a causal nexus between its actions and the Plaintiffs' claims, it contends that this element should be considered in conjunction with the "acting under" aspect of 28 U.S.C. § 1442(a) and "there cannot be any serious dispute of a causal nexus as the hydraulic design which the private entities supplied (and which the government would have otherwise been required to supply) is the specific basis upon which Plaintiffs' claims are based."  R. Doc. 154, p. 25.  Because James Construction has failed to establish that it acted under the color of federal authority, it is not necessary to reach the question of whether there is a causal nexus between such action and Plaintiffs' claims.

[75] This basis for federal jurisdiction was originally asserted by Gilchrist and adopted by James Construction in its Amended Notice of Removal.  *See*, R. Doc. 14.

political subdivisions included in Plaintiffs' proposed class as well as indirect payments rendered to individuals and businesses through the National Flood Insurance Program ("NFIP").[76] James Construction asserts that these payments have resulted in subrogation rights in favor of FEMA and that "[t]o the extent that the recipients allege that they have not been fully reimbursed by FEMA for damages, FEMA is a partial subrogee" which under Louisiana law must be included in this action.[77] James Construction asserts that as a subrogee, FEMA is a real party in interest pursuant to Fed. R. Civ. P. 17 and a person to be joined if feasible under Fed. R. Civ. P. 19(a).[78] In response, Plaintiffs contend that "even if FEMA is a subrogee, its status as a real party in interest has no automatic effect on this litigation. 'Rule 17 is not a joinder statute; its purpose is to permit a subrogee to enforce rights in his own name, not to govern joinder of parties in cases of partial subrogation.'"[79]

Fed. R. Civ. P. 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest." The United States Supreme has noted that "of course an insurer-subrogee, who has substantive equitable rights, qualifies as such." *U.S. v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 380 (1949). "If the subrogee has paid an entire loss suffered by the insured, it is the only real

---

[76] *See*, R. Doc. 14 (Gilchrist's Joinder in Removal), ¶¶ 8-14; R. Doc. 68, ¶¶ 22-29. *See also*, R. Doc. 154, p. 28 ("in the event those Plaintiffs which received direct payments from FEMA through the State, including the City of Denham Springs, recover amounts in this lawsuit, the amounts recovered are to be repaid to FEMA, at least in part. Consequently, FEMA is a subrogee with respect to direct payments made through the State as La. C.C. art. 1829(5) provides for subrogation '[i]n other cases provided by law', such as that provided by 42 U.S.C. § 5155."); R. Doc. 155, p. 9 ("It is indisputable that at least some of these individuals have received flood remuneration from FEMA through the National Flood Insurance Program, and thus, FEMA is a subrogee to those rights.").

[77] R. Doc. 68, ¶ 28.

[78] R. Doc. 68, ¶ 29. Alternatively, based on Plaintiffs' proposed class definition, which includes "all public entities" within the geographic area, James Construction asserts that FEMA and other federal agencies within the area are plaintiffs. R. Doc. 68, ¶ 31. James Construction provides no legal support for its assertion that the possible inclusion of federal agencies within the scope of Plaintiffs' proposed class definition is sufficient to support federal subject matter jurisdiction.

[79] R. Doc. 159, p. 14 (quoting *Pan Am Realty Ltd. v. Wells Fargo Bank, National Association*, 2015 WL 4546264, at * 3 (W.D. Tex. July 28, 2015)).

party in interest and must sue in its own name.  If it has paid only a part of the loss, both the insured

and the insurer (and other insurers, if any, who have also paid portions of the loss) have substantive

rights against the tortfeasor which qualify them as real parties in interest."  *Id.* at 380-381.  *See*

*also*, La. C.C.P. art. 697 ("An incorporeal right to which a person has been subrogated, either

conventionally or by effect of law, shall be enforced judicially by: (1) The subrogor and the

subrogee, when the subrogation is partial; (2) The subrogee, when the entire right is subrogated.").

Plaintiffs do not contest that FEMA may have a subrogation interest in these proceedings; rather,

Plaintiffs submit that regardless of FEMA's status as a real party in interest, it is not a person

required to be joined pursuant to Fed. R. Civ. P. 19(a).[80]

      Assuming, *arguendo*, that FEMA is a real party in interest based on its subrogation rights,

FEMA ***has not*** sought to intervene in this suit, and no party has moved to join FEMA as a party-

plaintiff.  Instead, Defendants ask this court to find federal subject matter jurisdiction exists

pursuant to 28 U.S.C. § 1345 based on the hypothetical joinder of an alleged insurer-subrogee.[81]

*See*, *Johnson v. Qualawah Holdings, LLC*, 990 F.Supp.2d 629, 635 (W.D. La. Jan. 6, 2014)

("ICSP's interpretation of Rule 17, on the other hand, would seem to dictate that any time a non-

party has an interest in ongoing litigation that that entity is somehow automatically made a party

to said litigation by operation of law.  With this, the court cannot agree, and ICSP cites no authority

directly on point which would persuade the court otherwise.").  *Compare*, *D'Elia v. Arrow*

*Products, Inc.*, 2016 WL 3086928, at * 1 (D.S.C. June 2, 2016) ("'[A] partial subrogee' whose

---

[80] Fed. R. Civ. P. 19(a) provides that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

[81] *See*, R. Doc. 14, ¶ 13 ("Gilchrist is entitled to join in the removal of this action on the basis that FEMA is a real party and [sic] interest and will intervene as a Plaintiff in this action.").

presence will not destroy the district court's jurisdiction 'is a person to be joined if feasible' *upon timely motion* by a defendant.") (emphasis added).[82]

Further, even if FEMA was a person required to be joined pursuant to Fed. R. Civ. P. 19(a), 28 U.S.C. § 1345 only extends original federal jurisdiction over civil actions "***commenced*** by the United States, or by any agency or officer thereof…." Emphasis added. Defendants have provided no basis for their position that the hypothetical future joinder of a United States agency as a plaintiff constitutes a proceeding "commenced" by the United States at the time of Defendants' removal. *See*, *Brooks v. Nez Perce County*, 394 F. Supp. 869, 872 (D. Idaho April 25, 1975) ("Plaintiffs' argument that the United States, as trustee, has the right to bring this action but has not seen fit, giving the plaintiffs, as holders of the beneficial interest, the right to sue, does not alter the fact that this action was not 'commenced by the United States.'").[83] Accordingly, Defendants have not met their burden of establishing jurisdiction pursuant to 28 U.S.C. § 1345.

---

[82] James Construction cites *Travelers Indem. Co. v. Westinghouse Elec. Co.*, 429 F.2d 77, 79 (5th Cir. 1970), for its position that FEMA must be joined because neither a subrogor nor subrogee is entitled to bring an action alone. R. Doc. 68, ¶ 28. In *Travelers*, two insurers brought suit in federal court against alleged tortfeasors to recover amounts allegedly paid to their insured. In a state court suit, a third, non-diverse insurer sought to recover sums paid to the insured from the alleged tortfeasors, and the insured itself filed a third party demand against the alleged tortfeasors to recover its uninsured losses. *Id.* The court noted that "Louisiana does not recognize a cause of action by a partial subrogee absent joinder of the partial subrogor" and stated that "[u]nless there has been a total subrogation, the action may be brought only by the subrogor and the subrogee. Neither one is entitled to bring the action alone." *Id. Travelers* is of limited assistance here. Significantly, it appears that FEMA has discretion to determine whether it will seek to recover amounts purportedly paid. See, 42 U.S.C. § 5155(c) ("A person receiving Federal assistance for a major disaster or emergency shall be liable to the United States to the extent that such assistance duplicates benefits available to the person for the same purpose from another source. The agency which provided the duplicative assistance shall collect such duplicative assistance from the recipient in accordance with chapter 37 of Title 31, relating to debt collection, when the head of such agency considers it to be in the best interest of the Federal Government."). As stated herein, FEMA has not sought to intervene in this suit and is not currently a party. In contrast, in *Travelers*, both the insured and the insurer(s) were actively seeking recovery against the alleged tortfeasors, albeit in different forums.

[83] Citing *Travelers*, James Construction reasons that "the federal government's claim as a partial subrogeee is preempted by federal law" and that "[a] determination of the federal government's status [as] a partial subrogee is 'necessarily raised' in this case, because Plaintiffs, as partial subrogors, are prohibited under Louisiana law from bringing claims without the joinder of partial subrogees." R. Doc. 154, pp. 31-34. Without more, James Construction's assertion that a determination of FEMA's status as a partial subrogee necessarily raises a substantial issue of federal law is unpersuasive. *See*, *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (the party seeking removal bears the burden of demonstrating that a federal question exists pursuant to 28 U.S.C. § 1331); *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (doubts about the propriety of removal are resolved in favor of remand).

### F.  Federal Preemption Based on Flood Insurance Policies

James Construction asserts "[a]n additional basis for federal question jurisdiction rests in the language of the applicable flood insurance policies."[84]  James Construction contends that flood policies issued pursuant to the NFIP contain provisions which provide that "[t]his policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968…and federal common law" and therefore this court has federal question jurisdiction over claims made under a federal flood insurance program.[85]  The Fifth Circuit has held that federal law preempts state law tort claims arising from claims handling by a WYO, but it does not preempt state law procurement-based claims.  *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754-757 (5th Cir. 2009).  *See also*, *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 390 (5th Cir. 2005).  Stated another way, the Fifth Circuit has concluded that claims related to insurance claims handling raise a federal question under 28 U.S.C. § 1331.  *Campo*, 562 F.3d at 757-758.  *See also*, *Grissom v. Liberty Mut. Fire Ins. Co.*, 678 F.3d 397, 400 (5th Cir. 2012) ("Federal law preempts 'state law tort claims arising from *claims handling* by a WYO.'")  (citing *Campo*, 562 F.3d at 754).  Here, Plaintiffs have not alleged a claim for improper claims handling and therefore the language of any underlying flood policies issued pursuant to the NFIP is insufficient to confer federal subject matter jurisdiction.

### G.  *Colorado River* Abstention

Finally, DOTD has filed a Reply Brief Regarding Plaintiffs' Motion to Remand raising, for the first time, the issue of whether this court should abstain from exercising federal subject matter jurisdiction pursuant to *Colorado River Water Conservation Dist. v. United States*, 424 U.S.

---

[84] R. Doc. 68, ¶ 30.

[85] R. Doc. 68, ¶ 30.  *See also*, R. Doc. 14, ¶ 15.

800, 817 (1976).[86]   DOTD points out that following the filing of the instant lawsuit, Plaintiffs'

counsel filed a new state-court action against DOTD which "seeks certification of the same classes

of plaintiffs and recovery of the same damages and injunctive relief against DOTD."[87]   DOTD

contends that "[a]fter it is properly served, [it] will file third-party demands against the other

Defendants to assert any defense, indemnity, and contribution claims it may have in contract and

tort."[88]   DOTD argues that in light of the parallel state court proceeding, this court should abstain

from exercising federal subject matter jurisdiction.

     As an initial matter, it does not appear that this issue is properly raised in the context of a

reply brief.  *See*, *Elwakin v. Target Media Partners Operating Co., LLC*, 901 F.Supp.2d 730, 745

(E.D. La. Oct. 9, 2012) ("Courts in the Fifth Circuit have found that a court need not consider new

arguments raised for the first time in a summary judgment reply brief."); *Eitzen Bulk A/S v. Capex

Industries, Ltd* ., 2010 WL 5141257, at *3 (E.D. La. Dec. 13, 2010) ("Since these arguments were

first raised in Defendant's Reply brief, this Court will not consider them.").  Regardless, even if

DOTD's abstention argument was properly raised, it is not necessary to reach the question of

whether this court should abstain from exercising subject matter jurisdiction pursuant to *Colorado

River* because this court has already found that it cannot exercise subject matter jurisdiction in the

first place.  *See*, *Colorado River*, 424 U.S. at 817 ("Generally, as between state and federal courts,

the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the

same matter in the Federal court *having jurisdiction*….'") (emphasis added).  *See also*, *African

---

[86] R. Doc. 171.  James Construction has filed a Response to DOTD's memorandum.  R. Doc. 174.  Therein, James Construction asserts that because the state court suit does not involve the same parties, it is not presently a parallel proceeding and that the *Colorado River* factors do not support abstention.  James Construction further asserts that it is improper for a plaintiff to file a state court suit for the purpose of subverting federal jurisdiction.  As set forth herein, it is unnecessary to reach any parties' arguments for or against abstention pursuant to *Colorado River*.

[87] R. Doc. 171, p. 2.

[88] R. Doc. 171, p. 3

*Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 797 (5th Cir. 2014) ("*Colorado River* abstention is a narrow exception to a federal court's 'virtually unflagging' duty to adjudicate *a controversy that is properly before it*.'") (internal citations omitted, emphasis added).

### III.    Conclusion

"Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'" *Gutierrez*, 543 F.3d at 251 (quoting *In re Hot–Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)).  Here, Defendants have not met their burden of establishing that this court has federal subject matter jurisdiction.  *See*, *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (The party seeking removal bears the burden of demonstrating that federal subject matter jurisdiction exists.).

Although 28 U.S.C. § 1332(d)(5)(A) does not preclude the exercise of CAFA jurisdiction, the court is required to abstain from exercising CAFA jurisdiction pursuant to 28 U.S.C. § 1332(d)(4)(A).  Defendants have not established either that resolution of a federal issue is necessary to resolution of Plaintiffs' state law claims or that Plaintiffs' Petition raises a substantial issue of federal law.  Additionally, Defendants have failed to establish federal subject matter jurisdiction under 28 U.S.C. §§ 1442 or 1345.  Plaintiffs have not alleged a claim for improper claims handling and therefore the language of any underlying flood policies issued pursuant to the NFIP is insufficient to confer federal subject matter jurisdiction.  Finally, based on the analysis herein, it is not necessary to reach the issue of whether this court should abstain from exercising federal subject matter jurisdiction pursuant to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

**IV.     Recommendation**

For the reasons set forth herein the undersigned RECOMMENDS that the Motion to Remand[89] be GRANTED and that this matter be remanded to the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

Signed in Baton Rouge, Louisiana, on June 28, 2017.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[89] R. Doc. 129.

44